BANGOR BOOM CORPORATION *versus* JAMES WHITING *& al.*

When the authority given to a corporation is to *boom* lumber and receive toll
therefor, it is not entitled to demand toll for *driving* lumber, that sort of
business not being within its corporate powers.

In a suit by such corporation, upon an account annexed for *driving* and
*booming* lumber, it is rightful to allow the plaintiffs to amend by withdraw-
ing the charge for the *driving*.

Payments to a person, acting as agent for such a corporation, made partly
to pay for *driving* and partly for *booming*, are to be applied to each, ac-
cording to the intent of the parties when the payments were made.

If the doings of such an agent are some of them *within* and some of them
*beyond* the corporate powers, the corporation may ratify his doings so far
as they were within its powers, but no further.

ASSUMPSIT on account annexed.    General issue pleaded.
The plaintiffs were chartered with authority to *boom* lumber
and receive toll therefor, at the rate of 38 cents per thousand
feet.    This action was for *driving* and *booming* logs.    The
defendants objected that the *driving* of lumber was not author-
ized by the plaintiffs' charter.    This objection was sustained
by the Court, WELLS, J.

The plaintiffs then moved to withdraw the charge for *driving*.
This was allowed and was done, although objected to by the
defendants.

The following facts were proved.    The plaintiffs, by their
agent, Moody, drove and boomed logs, beginning in the spring

of 1846.  Washburn was the owner·of the logs until he mortgaged them, in June of that year, to the defendants, who took them into actual possession, 27th July.  Being called upon by Moody, they promised to pay the plaintiffs' past and subsequent charges upon the logs, if the plaintiffs would continue to drive and boom them, which the plaintiffs accordingly did.

For the plaintiffs' services upon the logs, Moody received several hundred dollars, partly from Washburn and partly from the defendants.

The defendants then offered to prove that Moody, acting for the plaintiffs, before commencing work upon the logs, agreed with Washburn to drive and boom them for him at sixty cents per thousand feet.  This evidence was excluded.

The defendants' counsel then requested instruction to the jury, that the defendants were not liable to pay for boomage, prior to their taking actual possession of the logs under the mortgage ; and that they were entitled to have all the money which had been paid to Moody, applied toward the charges for the *booming*, inasmuch as the plaintiffs had no right to recover pay for *driving*.

The jury were instructed that the corporation were entitled to a lien on the logs for the booming ; that they might yield up the lien, and have a right of action against the defendants, being mortgagees, if the lien was surrendered at their instance, and if the credit was given to them, whether they had or had not taken possession.

That, of the payments to Moody, so much shall be applied to pay for *driving* and so much for *booming* as was the intent of the parties, when the payments were made.  That, if the lien was surrendered to the defendants, and a credit given to them, the plaintiffs would be entitled to recover of them for the boomage, so much as had not been paid to Moody for that service.

The verdict was for the plaintiffs.

*Hobbs*, for defendants.

1. The amendment was wrongfully allowed.  It changed the cause of action.  An amendment ought never to be allowed, if

it would injure the other party. *Dodge* v. *Tileston*, 12 Pick. 328. It was a surprise. Defendants were supposing the plaintiffs were attempting to charge them on the special contract.

2. The proof of the special contract was wrongfully excluded. 7 East, 479; 14 Johns. R. 377; 11 Johns. R. 346; 1 Stark. R. 113. It deprived the defendants of a valid defence.

3. The instruction to apportion the payments made to Moody was wrong. All ought to have been applied to "*boomage.*" As the contract for the *driving* was void, none of the payments could be applied to it. There was no liability, no indebtment but for *boomage.* It is to claims which are legal, that the law applies payments.

4. As to ratification of the unauthorized acts of agents, we cite 8 Wheat. 363; 8 Mass. R. 299; 17 Mass. R. 28, 29; 1 Pick. 220.

The defendants, though mortgagees, were not liable for the boomage, until they had taken possession. 1 H. B. 114, and cases cited. 6 Shepl. 132; 20 Maine R. 213; 15 Johns. R. 298.

*Ingersoll* and *A. Sanborn,* for plaintiffs.

SHEPLEY, J. — The action was assumpsit on an account annexed to the writ for driving, booming, rafting and delivering "certain mill logs and lumber." A verdict was found in favor of the corporation, and the case is presented on a report for the consideration of several objections, taken by the counsel for the defendants to the rulings and instructions of the Court.

1. The first is, that an amendment was allowed to be made by erasing the word "driving." It is said this changed the form of action. The declaration contains no count on a special agreement; the effect was only to diminish the claim by excluding from the contest a matter, for which the corporation could not recover. It was not liable to the objection, that it divided the plaintiffs' claim and deprived the defendants of credits as in the case of *Dodge* v. *Tileston,* 12 Pick. 328.

2. The second is, that testimony to prove, that Thomas M. Moody, professing to act for the corporation, made a special contract with George W. Washburn, who had made a conveyance of the lumber to the defendants in mortgage, respecting the rafting, booming and driving of the logs, was excluded.

The counsel for the corporation, in opening the case to the jury, had stated that Moody was the sole corporator, and that he had made such a special agreement. The counsel for the defendants had objected, that the corporation could not recover upon it, for it "was beyond the scope of the charter." There does not appear to have been any evidence that Moody was authorized by the corporation to make such a contract. The remarks of counsel, that he was the sole corporator are relied upon; but if such remarks were to be regarded as testimony in the cause, the administration of justice would be greatly changed, and it is to be feared not for the better.

If the corporation had by a vote attempted to confer such an authority upon Moody, it would have failed to do so; for it was not authorized by its charter to make such a contract. If Moody made the contract he alone would be bound to execute it. The corporation having no legal connexion with it could not be affected by it. Its right to claim compensation for boomage of logs, which it was by its charter authorized to collect and receive, could not be affected by an attempt to connect it with the performance of other unauthorized acts.

The testimony was properly excluded.

3. It is alleged, that the instructions respecting the application of the payments made to Moody for " boomage" and for services performed by him were erroneous. The argument is, that if the special agreement be invalid, the law will infer, that all payments were made on account of the claim, for which the defendants were legally liable. This would be correct, if the payments had been made to the corporation on account of what was supposed to be due it. But they were made to Moody; and some of them expressly on account of matters, with which he could not connect the corporation. Such payments could not be considered as made to the cor-

poration. Receipts are liable to explanation by parol testimony. Testimony for this purpose was introduced, and the jury were instructed in substance to allow the defendants to have the benefit of whatever sums had been paid at any time on account of boomage, and that payments made to Moody for other purposes should not be considered as payments made to the corporation. These instructions appear to have been correct.

4. It is alleged, that the instructions respecting the description of logs, on which the toll, or boomage as it is called, could be legally collected, were erroneous. They were in substance, that the corporation could recover the toll only upon such logs, as had been rafted from the boom and delivered to the defendants or to their agents. It is insisted, as the men, who received the logs, were employed by Moody, they were acting as the servants of the corporation, and not as the servants of the defendants. This would depend upon the capacity in which they acted. If they were employed by Moody, acting under an agreement made by him with the defendants to float the logs to their mills, an agreement with which the corporation could have no legal connexion, such men would become for that purpose the agents of the defendants. It could make no difference, if the same persons were also at the same time the agents of the corporation, while employed about its business to raft and deliver the logs. A person may be the servant and agent of one person or corporation for one purpose, and of another for another purpose respecting the same property at the same time. There does not appear to have been any error in these instructions.

5. It is said, that the defendants were mortgagees not in possession, and that the instructions respecting their liability were erroneous. The instructions were, " that the plaintiff was entitled to receive of the defendants the boomage on the logs mortgaged, upon which the lien had been given up by the plaintiffs to the defendants, and for which boomage credit had been given by the plaintiffs to the defendants." The argument is, that the lien upon the logs for toll was relinquished by

Moody, that the credit was given by him, and that the promise to pay was made to him. That if he had no authority to act for the corporation, it could claim no benefit from an agreement made with him. But the corporation might authorize or ratify his acts to the extent of its corporate power and no further. This power was sufficient to embrace contracts respecting the toll upon logs.

*Judgment on the verdict.*