DOWNING *v.* MOUNT WASHINGTON ROAD COMPANY.

Corporations have no powers except such as are given them by their charters, or such as are incidental and necessary to carry into effect the purposes for which they were established.

A charter, giving authority to make and keep in repair a road to the top of Mount Washington, to take tolls of passengers and for carriages, to build and own toll-houses, and to take land for the road, does not authorize the corporation to establish stage and transportation lines, or to buy carriages and horses for such a purpose.

An additional act, authorizing the company to erect and maintain, lease and dispose of any buildings found convenient for the accommodation of their business, and of the horses, carriages and travelers, passing over their road, does not authorize the purchase of carriages and horses for the purpose of transportation.

The powers of the agents of corporations are necessarily limited to such contracts as the corporation may lawfully make.

A corporation cannot ratify a contract, made by their agent, which they could not lawfully authorize.

ASSUMPSIT, brought by Lewis Downing & Sons, to recover the price of eight omnibuses, and a model for the same, one light wagon, and one baggage wagon, made for the defendants, under a contract entered into by D. O. Macomber, president of the defendant corporation, in their behalf.

The light wagon was made and sent to one Cavis, the agent for building the road, and was used by him in mak-

ing it. The omnibuses and baggage wagon were intended to be used in conveying passengers up and down the mountain, after the road was completed. The omnibuses were constructed in a peculiar way, and are not fit for use on ordinary roads.

By their act of incorporation, passed July 1, 1853, the corporation was empowered to lay out, make and keep in repair, a road from such point in the vicinity of Mt. Washington as they may deem most favorable, to the top of said mountain, &c., and thence to some point on the northwesterly side of said mountain, &c., to take tolls of passengers and for carriages, to build and own toll-houses, and to take land for their road.

The corporation was duly organized, and at a meeting of the directors on the 31st of August, 1853, before said contract was made, it was " voted that the president be the legal agent and commissioner of the company ;" and his compensation as such was fixed.

" The president" was " directed to proceed with the letting of the work for the construction of the road," " the obtaining the right of way," and " what other action he shall deem proper, for the interests of the company," &c.

A committee was appointed " to settle in relation to the right of way, &c., and in relation to land on which to build stables and other buildings, for the use of the road, and also for building all such stables and houses as may be necessary for the operations of the company."

It appeared that by an additional act, passed July 12, 1856, the corporation were authorized " to erect and maintain, lease and dispose of any building or buildings, which may be found convenient for the accommodation of their business, and of the horses and carriages and travelers passing over said road."

The defendants denied the authority of Macomber to make such a contract in behalf of the corporation, and

the power of the corporation under its charter either to authorize or enter into such a contract.

*Kittredge & Bellows,* for the plaintiffs.

*George & Foster,* for the defendants.

BELL, C. J.* Corporations are creatures of the legislature, having no other powers than such as are given to them by their charters, or such as are incidental, or necessary to carry into effect the purposes for which they were established. *Trustees* v. *Peaslee,* 15 N. H. 330; *Perrine* v. *Chesapeake Canal Co.,* 9 How. 172. In giving a construction to the powers of a corporation, the language of the charter should in general neither be construed strictly nor liberally, but according to the fair and natural import of it, with reference to the purposes and objects of the corporation. *Enfield Bridge* v. *Hartford R. R.,* 17 Conn. 454; *Strauss* v. *Eagle Co.,* 5 Ohio (N. S.) 39.

If the powers conferred are against common right, and trench in any way upon the privileges of other citizens, they are, in cases of doubt, to be construed strictly, but not so as to impair or defeat the objects of the incorporation.

In the present case the power to take the lands of others, and to take tolls of travelers, must be strictly construed, if doubts should arise on those points; but it is not seen that the other grants to the defendant corporation should not receive a fair and natural construction.

The charter of the Mount Washington road empowers them to lay out, make and keep in repair, a road from Peabody River Valley to the top of Mount Washington, and thence to some point on the northwest side of the mountain. It grants tolls on passengers and carriages, and authorizes them to take lands of others for their road, and to build and own toll-houses, and erect gates, and

* BELLOWS, J., did not sit.

appoint toll-gatherers to collect their tolls. The remaining provisions contain the ordinary powers of corporations, relating to directors, stock, dividends, meetings, &c. Laws of 1853, chapter 1486.

This charter confers the usual powers heretofore granted to turnpike corporations, and no others. The most natural and satisfactory mode of ascertaining what are the powers incidentally granted to such companies, is to inquire what powers have been usually exercised under them, without question by the public or by the corporators. It may be safely assumed that the powers which have not heretofore been found necessary, and have not been claimed or exercised under such charters, are not to be considered generally as incidentally granted. Such charters have in former years been very common in this and other States, and they have not, so far as we are aware, been understood as authorizing the corporations to erect hotels, or to establish stage or transportation lines, to purchase horses or carriages, or to employ drivers in transporting passengers or freight over their roads; and no such powers have any where been claimed or exercised under them. We are, therefore, of opinion that the power to establish stage and transportation lines to and from the mountain, to purchase carriages and horses for the purpose of carrying on such a business, was not incidentally granted to the defendant corporation by their charter. *State* v. *Commissioners,* 3 Zab. 510.

But it is contended that the power to make this contract is conferred by the act in amendment of the charter, passed July 12, 1856. By this act the corporation may " erect and maintain, lease and dispose of any building or buildings which may be found convenient for the accommodation of their business, and of the horses and carriages and travelers passing over their said road." By *their business,* which the buildings to be erected were designed to accommodate, it is said the legislature must have

intended some permanent and continuing business beyond that of merely building and maintaining a road; and that it could be no other than that of erecting a hotel on the mountain, and establishing lines of carriages, for the purpose of carrying visitors up and down the mountain.

But the foundation of this implication is very slight. The express grant is of an authority to erect, &c., buildings, not of all kinds, but such as may be found convenient for the accommodation of their business, and of travelers, &c. The business here referred to must be understood to be such as they are by their charter authorized to engage in. If nothing had been said of horses and travelers, there could hardly be any foundation for the idea that a hotel could have been contemplated by the legislature. Buildings suitable for the accommodation of their toll-gatherers and workmen employed on their road, would probably be thought every thing the legislature intended to authorize by this additional act. Connected as this authority now is with travelers, horses and carriages, there is scarce a pretence for argument, that this additional act goes any further than the original act, to authorize a stage and transportation company. It is not unlikely that some of the projectors of this enterprise intended to secure much more extensive rights than those of a turnpike and hotel company, but it seems certain they have not exhibited this feature of their case to the legislature so distinctly as to secure their sanction, and the charter and its amendment as yet justifies them in no such claim.

The power of buying and selling real and personal property for the legitimate purposes of the corporation, and the power of contracting generally for the same purposes, within the limits prescribed by the charter, being granted, we understand the principle to be, that their purchases, sales, and contracts generally, will be presumed to be made within the legitimate scope and purpose of the corporation, until the contrary appears, and that the burden of

showing that any contract of a corporation is beyond its legitimate powers, rests on the party who objects to it. *Indiana* v. *Woram*, 6 Hill 37; *Ex parte Peru Iron Company*, 7 Cow. 540; *Farmer's Loan* v. *Clowes*, 3 Comst. 470; *Same* v. *Curtis*, 3 Seld. 466; *Biers* v. *Phenix Company*, 14 Barb. 358.

If a corporation attempt to enforce a contract made with them in a case beyond the legitimate limits of their corporate power, that fact being shown, will ordinarily constitute a perfect defence. *Green* v. *Seymour*, 3 Sandf. Ch. 285; *Bangor Boom* v. *Whiting*, 29 Me. 123; *Life &c. Company* v. *Manufacturers &c. Company*, 7 Wend. 31; *New-York &c. Insurance Company* v. *Ely*, 5 Conn. 560.

And if a suit is brought upon a contract alleged to be made by the corporation, but which is shown to be beyond its corporate power to enter into, the contract will be regarded as void, and the corporation may avail themselves of that defence. *Beach* v. *Fulton Bank*, 3 Wend. 573; *Albert* v. *Savings Bank*, 1 Md. Ch. Dec. 407; *Abbot* v. *Baltimore &c. Company*, 1 Md. Ch. Dec. 542; *Strauss* v. *Eagle Insurance Company*, 5 Ohio (N. S.) 59; *Baron* v. *Mississippi Insurance Company*, 31 Miss. 116; *Bank of Genesee* v. *Patchin Bank*, 3 Kern. 315; *Gage* v. *Newmarket*, 18 Q. B. 457.

The contract set up in this case was made not by the corporation itself, by a vote, nor by an agent expressly authorized to sign a contract already drawn, but it was made by the president of the corporation, acting under an appointment as their general agent; and it is argued that he was fully authorized by votes of the corporation to bind them by such a contract as the present; but it is not necessary to consider this question, as we think it settled that the powers of the agents of corporations to enter into contracts in their behalf are limited, by the nature of things, to such contracts as the corporations are by their charters authorized to make. This principle is distinctly recognized in *McCullough* v. *Moss*, 5 Den. 567; overruling

the case of *Moss* v. *Rossie Lead Co.*, 5 Hill 137, and in *Central Bank* v. *Empire Co.*, 26 Barb. 23 ; *Bank of Genesee* v. *Patchin Bank*, 3 Kern. 315.

The same want of power to give authority to an agent to contract, and thereby bind the corporation in matters beyond the scope of their corporate objects, must be equally conclusive against any attempt to ratify such contract. What they cannot do directly they cannot do indirectly. They cannot bind themselves by the ratification of a contract which they had no authority to make. 5 Den. 567, above cited. The power of the agent must be restricted to the business which the company was authorized to do. Within the scope of the business which they had power to transact, he, as its agent, may be authorized to act for it, but beyond that he could not be authorized, for its powers extend no further.

This view seems to us entirely conclusive against the claim made for the omnibuses and model, and probably for the baggage wagon.

As to the light wagon, that may stand on a different ground. Such a wagon might be useful and necessary for the use of the agent of the company, in conducting the undoubted business of the corporation—the building and maintaining the road.

We are unable to assent to the position taken in the argument, that a ratification of part is a ratification of the whole contract. While the corporation may be restricted from ratifying a contract beyond the scope of the objects of the corporation, there could be no such objection as to any matter clearly within their power. The other contracting party might have a right to reject such ratification, claiming that the contract is entire, and if not ratified as such, it should not be made good for a part only. But if they claim the benefit of the partial ratification, the corporation can hardly object.