## MACHEBEUF et al. *v.* CLEMENTS.

POWER OF ATTORNEY — *performance of conditions in.* A power of attorney in which conditions to the exercise of the power are prescribed, as that the lands shall be conveyed, upon application therefor, within a time specified, and upon payment of a certain price, and the like, confers no authority to bind the principal except upon performance of the conditions.

*Presumption as to performance.* Whether, upon proof, that a deed was executed by the attorney in the name of the principal, in virtue of such authority, a presumption should be indulged that the conditions were duly performed, is, upon principle and authority, doubtful.

*Admissions by attorney as to performance.* Where, as in this case, however, the attorney has authority to determine whether the conditions have been performed, the execution of a deed, by him, in the name of the principal, should be regarded as an admission of that fact during the pendency and continuance of the agency, which is binding upon the principal.

*Burden of proof as to performance of conditions.* And in a suit by the principal to set aside a deed by the attorney, in virtue of such authority, the burden of showing that the conditions were not performed, is upon that ground with the complainant

So, also, where, as in this case, the complainant grounds his action upon negative allegations, the burden of showing that negative is upon him.

Unless the subject-matter of the negative is such as not to admit of convenient proof, and it may reasonably be inferred, that if untrue, the defendant has peculiarly within his control the means of showing the affirmative.

And this case is not within the exception.

*Error to District Court, Arapahoe County.*

ALFRED H. CLEMENTS filed his bill in the district court of Arapahoe county against Joseph P. Machebeuf and twenty-two others, alleging that he owned a certain tract of land, embracing many blocks and lots, in the city of Denver. That in the years 1864 and 1865, one James Hall, pretending to act as the attorney in fact of the complainant, conveyed by deed of general warranty, some of the said lots and blocks to the said Machebeuf and others to the other defendants respectively. That all of the said deeds were made without any authority whatever, and that the said defendants combined and confederated with the said Hall to cheat and defraud the complainant, etc.

The prayer of the bill was that the said deeds might be set aside, canceled, etc.

The defendants admitted that the complainant owned the land and that Hall made the deeds as alleged, and relied upon certain powers of attorney, the first being as follows :

Know all men by these presents, that I, Alfred H. Clements of Central city, in the county of Gilpin and territory of Colorado, have made, constituted and appointed, and by these presents do make, constitute and appoint, James Hall of Denver City my true and lawful attorney for me and in my name, place and stead, to act upon the application and demand of any person or persons actually owning and showing the same by abstracts of title properly certified to by the county clerk of Arapahoe county, C. T., to town lots in Denver City, situate on the south ($\frac{1}{2}$) half of north-east, ($\frac{1}{4}$) and east ($\frac{1}{2}$) half of south-east ($\frac{1}{4}$) quarter of section (34) thirty-four, town (3) three south, range (68) sixty-eight west, in aforesaid county and territory, and upon the payment of forty cents (40 cts.) for each and every lot, and the further expenses of making, acknowledging and delivering and all other expenses of every name and nature in accordance with the tenor and meaning of a certain bond executed by me to H. J. Brendlinger, mayor of Denver City, in trust for

the citizens thereof, dated June, 1864, and upon the fulfillments of the above requirements and all others as intended and mentioned in said bond aforesaid, to make, execute and deliver good and sufficient deed or deeds with covenants of warranty to any person or persons that may apply for the same within three months from date of said bond aforesaid, and in compliance of the same, giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as I might or could do if personally present with full power of revocation, hereby ratifying and confirming all that my attorney or his substitute shall lawfully do or cause to be done by virtue thereof.

In witness whereof I have hereunto set my hand and seal this fourteenth day of June, 1864.

ALFRED H. CLEMENTS.

Sealed and delivered in presence of

CHAS. R. FISH.

The second power of attorney was dated June 17, 1864, and authorized Hall to enter into all lands in the county of Arapahoe to which Clements was in any way entitled, and to sell the same and convey by quitclaim deeds, being a general power without conditions. This instrument is not noticed in the opinion of the court. There was evidence which tended to prove that the bond mentioned in the first power of attorney had been lost, and it was not produced at the hearing. The court set aside the several conveyances made to the defendants respectively, according to the prayer of the bill.

Mr. E. L. SMITH and Mr. ALFRED SAYRE, for plaintiffs in error.

Mr. S. E. BROWNE, for defendants in error.

The chief-justice did not sit at the hearing.

WELLS, J.   The plaintiffs in error have assigned for error

only the final decree given in the district court, and we have therefore omitted all consideration of the sufficiency of complainant's bill, and the regularity of the proceedings anterior to the decree.

In view of the conclusion to which we have arrived upon another point in the case, it will be unnecessary to consider whether the conveyances sought to be impeached by the bill can be referred to the letter of attorney of June 17, 1864. I therefore proceed to the question whether they can be sustained, as executed under the letter of attorney of June 14th. It is manifest that the authority given by the instrument was a conditional or limited one, in order to the exercise of which certain prerequisites must have occurred; thus the attorney could convey only upon application; the application must have been within three months next after the date of the bond to Brendlinger, which is referred to in the power; the applicant must have produced to the attorney an abstract of his title, certified from the recorder's office; he must have paid the sum of 40 cents for each lot conveyed, and the expenses of the conveyance; and all other requisites and conditions set down in the bond to Brendlinger must have been complied with and performed; and if the conveyances here complained of, or any of them, were executed without performance of these conditions, it may, I think, be well enough said that it was, in the language of the bill, "without any authority whatsoever." But the defendants severally deny this allegation of the bill, and there is no evidence, outside of the conveyances themselves, to show whether the conditions, set down in the letter of attorney of June 14th, were or were not performed; I think the case must therefore turn upon the question whether it was incumbent upon the complainant to prove the negative allegation of his bill in this respect, or upon the defendants to sustain the affirmative contained in the answer in response thereto; that is to say, upon whom is the burden of proof?

It is argued, on the part of the plaintiffs in error, that, inasmuch as nothing appears to the contrary, the attorney

must be supposed to have observed the limitations imposed upon him, according to the maxim *"omnia rite esse acta;"* and since, if there be such presumption, the defendants in the court below were at liberty to rest thereon until it was overthrown, even though the burden of proof should be held to be upon them, it will be necessary to inquire how far the maxim sought to be applied extends.   In respect to the acts of public officers, this maxim is of almost universal application, and its force and scope in that class of cases is, I think, pretty well established and defined.   How far it may be applied in support of the acts of private agents is, upon authority, not very clear.

In Mr. Broom's work (Leg. Max. 730*), it is said that the presumption applies to the acts of private individuals, especially when they are of a formal character, as writings under seal; and the same doctrine is asserted in substantially the same words in Mr. Phillip's work on Evidence (5th Am. ed. 643*), where many examples are cited from reported cases.

I do not perceive, however, that any of the cases there referred to are quite analogous to this, and, so far as I have been able to examine them, they appear to be examples of the application of the same maxim in another form, in which it is sometimes seen in the books, and in which lapse of time is essential to raise the presumption.   1 Greenl. Ev., § 20. There are, indeed, many instances wherein the courts, although not expressly referring to this maxim, appear to apply the rule which it announces; *e. g.*, the seal of a corporation appearing affixed to a deed purporting to be theirs, is presumed to have been affixed by proper authority. *Kohler* v. *Black River Falls Iron Co.*, 2 Black, 717.   So, where a corporation is authorized by its charter to acquire and hold real or personal estate in a particular manner, or for particular purposes, and it is found in possession of such estate, it is presumed, nothing appearing to the contrary, to have acquired it in the manner and for the purposes authorized in the charter.   *Downing* v. *Mt. Washington Road Co.*, 40 N.H. 234; *DeGroff* v. *Am. Linen Thread Co.*, 21 N.Y. 126;

*Chautauqua Bank* v. *Risley*, 19 id. 381; *Farmers' Loan and Trust Co.* v. *Curtiss*, 7 id.; *Farmers' Bank* v. *Detroit R. R. Co.*, 17 Wis. 372.

So, where an insurance company was authorized to receive promissory notes in certain cases only, it was held, in an action brought by the corporation upon certain notes, wherein it was named as payee, that, in the absence of proof to the contrary, it must be presumed that they were executed in a transaction within the corporate powers, and in which the company were authorized to receive them. *Mutual Benefit Life Ins. Co.* v. *Davis*, 12 N. Y. 573.

The case of *Howard* v. *Boorman*, 17 Wis. 459, asserts the same doctrine. The same presumption has been applied to negotiable paper executed by a corporation. *Safford* v. *Wyckoff*, 4 Hill. So in the case of negotiable paper purporting to be executed in the name of a partnership, the signature being shown to be in the handwriting of one of the firm, it is held that a presumption arises that the paper was executed in a partnership transaction, and not for the individual debt of him who subscribed it. *McMullan* v. *McKenzie,* 2 G. Greene, 368; *Ensminger* v. *Marion*, 5 Blackf. 210.

These cases appear to me to be quite analogous to the one now under consideration. In every one of them the question was one of authority; authority to do the particular act, certain conditions concurring, was shown; and the courts presumed the concurrence of those things requisite to the rightful exercise of that authority, from the single fact that it had been exercised. And if we admit the doctrine of these decisions, it is difficult to deny its application to the present case; for it is not apparent that, upon principle, a distinction can be drawn between the case in which the authority is denied by letter of attorney, and those in which it springs from a charter of incorporation, or articles of copartnership; in each case the one exercising the authority is a private person, not acting under the sanction of an oath, nor liable to indictment for malfeasance. Nevertheless, the decisions here referred to have not, so far as I know, been questioned, and many others asserting quite as broad a doctrine might

be cited; and in a case decided in the supreme court of Tennessee, where A, having an equity in lands, upon which certain installments of purchase-money remained unpaid, had conveyed it to B, in trust, to secure an indebtedness to C, with power in the trustee, upon default in payment, after maturity of the indebtedness, to sell in satisfaction thereof, and the holder of the legal estate had conveyed to C, by deed reciting a prior sale by B, at which C became the purchaser, on bill brought by the heirs of A to compel a conveyance, nothing appearing to show whether B had ever sold to C, or if so, whether, before or after the maturity of the indebtedness, the court say that "the presumption of law is not only in favor of the exercise of the power, but in favor of meritorious claimants, or innocent purchasers, that it was exercised in the legal mode." *Wilburn* v. *Spofford et al.*, 4 Sneed, 704. A former decision of the same court (*Marshall* v. *Stephens*, 8 Humph. 159) is there cited, announcing the same doctrine.

Against these decisions, however, are others equally in point, and entitled to equal respect. In *Bruce* v. *Duke*, 2 Litt. 245, Bruce brought his bill to compel a conveyance of certain lands, to one moiety whereof he derived title from Maury, by conveyance executed in his name, by Barry, his attorney ; the letter of attorney after conferring power to settle and adjust land titles in Kentucky, and to bring, and defend suits necessary thereto, and to convey lands which the principal had before contracted to convey, contained a power in these words : "and if necessary, to make sale of any of my said lands ; " and it was objected that no necessity for the conveyance, by the attorney, under which the plaintiff claimed, was shown to have existed. To this the court, upon consideration of the evidence, were agreed ; and as to whether the exigency authorizing the sale was to be presumed from the fact of the conveyance, the court say, that "to admit the fact of a deed having been made, to be evidence of a necessity to sell, would, in effect, prostrate all distinctions between limited and general authorities. A purchaser would then, after procuring a deed of convey-

ance, be secure in the title, though in making the sale the
agent may have been guilty of the most palpable violation
of his authority.   The unauthorized act of the agent would
then be evidence of his having acted correctly, and under
the influence of that evidence the title would be adjudged
to pass from the rightful owner, by the act of another,
deriving no power or authority from him.''

So, in the same court a distinction has been observed
between public officers, acting under general laws, and
agents or commissioners appointed *pro hac vice*, by special
statute ; and as to the acts and proceedings of the latter
class, the presumption, *omnia rite esse acta*, is said not to
apply.   Thus, where commissioners had been appointed by
act of the legislature, with authority to sell and convey
such part of the lands of a decedent, as might be sufficient
to satisfy his debts, on ejectment, by one deriving title
through conveyance of the commissioners, it was held that
the plaintiff could not prevail, the existence of debts of the
decedent not being affirmatively shown ; and that upon no
principle could the presumption usually indulged in favor
of the acts of public officers acting under general laws, be
extended to the case of those deriving authority under
special enactments, to perform services of a private charac-
ter.   *Pittman* v. *Brownlee*, 2 A. K. Marsh. 210.   So in
*Gebron's Heirs* v. *Jones*, the supreme court of Virginia, in
a case precisely like that of *Wilburn* v. *Spofford*, arrived at
a conclusion directly opposed to that of the supreme court
of Tennessee.   In that case, lands had been conveyed, in
trust, to secure certain indebtedness of the grantor, with
power, in the trustee, to sell upon default in payment, after
giving notice ; bill was brought to set aside a conveyance
by the trustee upon the ground that the sale was made with-
out notice ; and the court held that no presumption could
be indulged, either in favor of or against the regularity of
the trustee's proceedings.   Upon authority, therefore, it can-
not be said that out of the mere fact that complainant's at-
torney has executed the conveyances mentioned in the bill, a
legal presumption arises that he complied with those limi-

tations which, in the letter of attorney, are prescribed to him. And I am not prepared to concede that, upon principle, such presumption ought to be indulged.

Nevertheless, it appears to me, that, what amounts to the same thing in this case, the conveyances ought, as against the complainant here, to be received as *prima facie* evidence of their own regularity. It is conceded that, without prior performance of the conditions limited in the letter of attorney, the conveyances are as absolutely without authority as though the letter of attorney had never been executed. But the grant of any thing implies the grant of every thing necessary to the enjoyment of the thing granted ; and so every express power bears with it, by implication, every other power necessary to its exercise. Broom's Leg. Max. 362*; *De Witt* v. *San Francisco*, 12 Cal. 289; *Rex* v. *Jackson*, 1 T. R. 653. And here, the principal having deputed, to the attorney, authority to act upon performance of the particular conditions nominated, has, by necessary implication, conferred the power to judge whether these conditions have been performed. The attorney was authorized to convey, but he could not convey until the conditions named by his principal were first complied with ; of necessity, therefore, he was bound to judge and determine, in the first instance, whether such compliance had been made ; and power to so judge and determine is as clearly given as though it had been set down in express words ; and the attorney having power to determine for his principal, as to the performance of those conditions, his admission that the conditions had been performed, which is by implication contained in each of these conveyances, is within the scope of the power delegated to him, and, being made during the execution of the agency, it is evidence against the principal. And herein this present case is distinguishable from *Bruce* v. *Duke*, for there the controversy was between those claiming under the conveyance executed by the attorney and a third person not claiming under the principal ; and, as against such third person, the admissions of the agent were no evidence whatsoever.

I conclude, therefore, that while it may well be doubted whether the legal presumption relied upon can be indulged, the conveyances executed by the attorney contain an implied admission, made within the scope of the attorney's authority, that all the conditions of the letter of attorney had been complied with ; and that, therefore, the conveyances in question are, as against the complainant, *prima facie* evidence of their own regularity.    But, if this reasoning is inconclusive, if the conveyances made by the attorney are not to be received as evidence of a compliance with the requisites of the power under which he assumed to act, then, inasmuch as no evidence *aliunde*, the conveyance was given, the question returns, upon whom was the burden of proof ?

And, as this question is not without difficulty, I have examined the authorities with some diligence, to ascertain what rule is applied by the courts in cases like the present. In the text-books, it is stated with tolerable clearness, as follows :  That where the plaintiff grounds his action upon negative allegation, the burden of showing that negation is upon him.   1 Greenl. Ev., § 78.   But to this rule is this exception :   That where the subject-matter of the negative is such as not to admit of convenient proof, and it may reasonably be inferred, that, if untrue, the defendant has, peculiarly within his control, the means of showing the affirmative, the burden of proof shall be upon him. 1 Greenl. Ev., § 79 ;  1 Phill. Ev. (5th Am. ed.) 813*.   This exception is grounded upon convenience merely; the law requiring that the plaintiff should produce evidence which, in the nature of things, must probably be inconclusive and unsatisfactory, and the production of which may involve delay and inconvenience, when, if the allegation be untrue, the defendant has, in his own hands, the means of at once and conclusively disproving it.

But upon this exception it seems, is to be noted another. That, though the case be as supposed in the last exception, yet if the negative involve a charge of fraud, or criminal omission of duty, the burden of establishing it shall, in

general, be upon him who asserts it. 1 Greenl. Ev., §§ 79, 80 ;
1 Phill. Ev. 812,* 815.*    In truth this latter exception seems
to be no exception ; for it amounts to this only, that the
presumption of innocence, which the law makes, shall stand
in lieu of those proofs which would otherwise be required
of the party accused, and so casts the burden upon his
adversary.    These propositions seem to me clearly deduci-
ble from the text writers, and to accord with sound princi-
ples, and the current of adjudged cases.    To apply them to
the present case it is to be resolved, 1st. Whether the alle-
gation of complainant's bill, that all of the several convey-
ances executed by Hall were executed without authority,
is necessary to the relief prayed ; and if so, 2d.   Whether
it may fairly be said that the truth of the matter, and the
means of proof, are so peculiarly within the knowledge
and control of the defendants, as to bring the case within
the exception to the general rule ; and if this be so, 3d.
Whether the bill contains the charge of fraud or crim-
inal omission of duty, in such sense as to raise the presump-
tion of innocence in favor of the defendants.    Upon the
first question, while it may well be doubted whether, even
in its present form, admitting every thing stated therein,
the bill shows a title to equitable relief, I take it to be too
clear for argument, that without the allegation of want of
authority in the attorney, it would be entirely insufficient to
warrant any decree in favor of the complainant.    It is, there-
fore, incumbent upon the plaintiff not only to allege, but
to prove the want of authority.    The burden of proof rests
upon him, unless the case comes within the exception.

As to the second question : The negative alleged in the
bill, like almost every negative allegation, admits not of
convenient proof, and the defendant may well be presumed
to have a knowledge of the several transactions which pre-
ceded each of these conveyances ; and possibly, of whether
the conditions in complainant's letter of attorney were or
were not performed ; but, with some hesitation, we have
concluded that it cannot justly be said that the evidence of
these transactions is more peculiarly within their control

than that of the complainant.   To each of the several trans-
actions which were consummated in these conveyances,
there were, so far as appears to us, but two privies, to wit:
the attorney, Hall, and the grantee in the conveyance.   This
is as far as our knowledge, from the record, extends.   Nor
are we warranted in assuming that there were others cog-
nizant of the details ; for, as matter of law, it cannot be said
that the defendants were bound to secure the attendance of
witnesses to their dealings with the complainant's agent ;
nor, having regard to the manner in which such affairs are
ordinarily transacted, is it to be supposed that in point of
fact they did so.   The attorney, Hall, died before the filing
of the bill ; and the only living witness who can speak with
directness as to either of the conveyances sought to be im-
peached, is the grantee therein, now impleaded before us.
Now, by the law as it stood when this cause was brought to
issue, the defendants were not permitted to give testimony
on their own behalf ; and, though the complainant might,
if he had seen fit, have compelled them to speak, yet by
requiring the defendants' answer to be given without oath,
he has effectually prevented this, and so, it may be said,
closed the only known avenue to the truth.   The com-
plainant, it is true, was under no obligation to put himself
at the mercy of his adversary ; unquestionably he was at
liberty to take the answer under oath, or without oath, ac-
cording as he saw fit ; but reference being had to the nature
of the transaction to be investigated, and the habits and
usages of men, we do not think the defendants can reason-
ably be said to have means of showing the truth of the
matter, superior to those within reach of the complainant,
unless allowed their own oath ; of which, as before sug-
gested, the complainant has precluded them.

What is here said in the application of the general rule
above stated, must not be regarded as a precedent which
shall bind us in all cases.

Generally, whoever alleges negative matter material to the
relief prayed, must prove the negative; whether any partic-
ular case is within the exception above noticed, in which

the burden of proof shifts to the opposite party, will depend sometimes upon the form of the action, sometimes upon who are the parties, sometimes, perhaps, upon the form in which the relief is sought, as is evidenced by the case of *Kitchell* v. *Burgum*, 21 Ill. 40, compared with *Stephenson* v. *Marony*, 29 id. 535, and in every instance the nature of the subject-matter or transaction involved in the controversy will enter into the question, so that no general rule can be prescribed; each case must rest upon its own circumstances. *Great Western R. R. Co* v. *Bacon*, 30 Ill. 353. The present case seems to us not to come within the exception. The burden of proof was upon the complainant, and, not having sustained his allegations, he must fail. It appears to be unnecessary, therefore, to go further, and inquire whether the bill can be said to charge fraud, in such sense as to raise the presumption of innocence, for the protection of the defendants, if the resolution of the second question had been otherwise.

The final decree of the district court, given on the 18th day of November, A. D. 1870, will therefore be reversed, and the cause will be remanded to the district court, with directions to that court, that, as to the plaintiffs in error, the bill be dismissed, with costs. The decree given against the defendant Hutchinson, in the court below, not being complained of, will not be disturbed.

*Reversed.*