[No. 5964.]

## MULFORD v. ROWLAND.

1.  Conveyances—Power of Attorney—Record — A power of attorney is within the concluding clause of § 446, Mills' Stats. One who asserts title to land under a conveyance by an attorney in fact, the power of attorney not being of record, is to be subordinated to one who, without notice of the power, acquires a hostile interest. Otherwise, where the adverse right is acquired with actual notice of the power of attorney, and the deed made thereunder.—(178, 179)

2. Appeals—Theory of the Trial Below—The court will give an agreed statement of facts the effect accorded to it by the parties and the court below, upon the trial in that court.—(180)

3. Evidence—Declarations of Agent—Recitation of a power of attorney in a conveyance of lands purporting to be executed under such power, is, as against one claiming under the constituent in the power, admissible, in connection with other evidence of the existence of the power to establish the execution of such power of attorney.—(182)

4. Conveyance of Lands by Attorney—A conveyance of lands describing the attorney in fact as the party of the first part, and subscribed by him with his own name "as attorney in fact," will not be rejected, as without effect, where it is confessed that the attorney had no interest, and it is apparent that the intention was to pass the title of the constituent.—(183)

5. Notice—To Nonresident—By the Public Record—A nonresident is chargeable with notice of what appears by the public records, and of the actual possession of lands by another, within the limits of this state.—(183)

*Error to Boulder District Court*—Hon. JAMES E. GARRIGUES, Judge.

Mr. J. R. ALLPHIN, for plaintiff in error.

No appearance for defendant in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an action to quiet title in plaintiff to an undivided two-thirds interest in the Critic lode mining claim, situate in Boulder county. The complaint is in the usual form, alleging generally that plaintiff is the owner in fee and in possession of the premises in controversy, and that defendant claims and asserts an interest therein hostile and adverse to plaintiff, which antagonistic interest plaintiff demands defendant shall be required to set up and have judicially determined. In the amended answer the first defense is a general denial. Plaintiff in error says the second defense was regarded by the parties at

the trial as a plea of our five-year statute of limitation.—§ 2923, 2 Mills' Ann. Stats. There is, however, coupled therewith and blended in the same statement a defense of ownership in fee, and the facts alleged, though improperly commingled in one statement, are sufficient to constitute both defenses. For a third defense, by way of counter-claim or cross-complaint, defendant alleges ownership in fee and actual and exclusive possession for more than twenty years immediately preceding the beginning of the action, and after setting up what plaintiff's pretended title is, he alleges that it constitutes no title whatever which can be asserted against that of defendant. The prayer of the cross-complaint is that plaintiff be required to set forth fully and minutely the nature of his alleged claim or interest, and the court is asked to determine, upon final hearing, that plaintiff's title is void and defendant's good. The replication denies the new matters in the second defense of the answer and in the cross-complaint or counter-claim, and with particularity sets up the title on which plaintiff relies. No evidence was taken. The cause was submitted to the court for decision upon the pleadings and an agreed statement of facts. The court, conceiving that three material questions are raised by the pleadings and the agreed facts, made the following findings: First, that title in the defendant under the statute of limitations was not proved; second, that plaintiff was not in possession at the time of the beginning of the action and therefore cannot maintain it; third, that plaintiff's alleged title is void and defendant's good. Upon these findings a decree was entered quieting title in defendant. Plaintiff sued out this writ of error to reverse it.

1. To the first finding, that defendant did not establish title under the statute of limitations, defendant excepted and has assigned cross error. As

defendant has not entered an appearance here, and no brief in his behalf has been filed, and for the additional reason that, in our view, as will hereinafter appear, defendant's title in fee, as alleged in the counter-claim, was established, he is not hurt by the first finding even if the same is sustained by the evidence, and we, therefore, disregard the assignment directed thereto.

2.   Under chapter 22 of our code, to maintain an action to quiet title to real estate the general rule is that plaintiff must be in actual possession of the property.   Our examination of the record leads to the same conclusion reached by the trial court, that plaintiff was not in possession of the premises at the time he began the action.   To the doctrine mentioned, however, there seems to be an exception under which plaintiff claims this case falls, that even though plaintiff was not in possession when the suit was begun, it cannot avail a defendant where the latter files a cross bill, thereby seeking to quiet his own title.   This was ruled in *Relender v. Riggs,* 20 Col. App. 423.   The authorities cited in the opinion in that case seem to sustain the doctrine.   But that is not material here.   Each party alleged title and possession in himself, and each asked the court to say which is good.   If plaintiff was in possession, he is not entitled to a decree, for, as we shall presently see, defendant's title is paramount and plaintiff's possession under an invalid title was nothing more than a trespass.   We proceed to a discussion of the only important and difficult question in the case, which is raised by the third general assignment, viz.: that the court improperly decided that defendant is owner in fee.

3.   As we understand the record, and in the absence of an appearance by defendant in error we have examined it with care, it was upon the court's

finding, under the issue raised by the counter-claim and replication, that plaintiff was not, and defendant was, the owner in fee that the decree passed. The record must be explored to see if the finding is sustained. The result of that search is here given. The location certificate of the mine named M. D. Barron, Louis Barron and Francis Bourke as locators, each owning an undivided one-third interest. Thereafter M. D. Barron sold his interest to Francis Bourke, who then became the owner of a two-thirds interest, Louis Barron retaining the one-third. Before the patent issued Francis Bourke died, leaving as his sole heir at law James Bourke, his father, who then, and at all times since, lived in Ireland and has never been in the United States. The patent described Louis Barron and the heirs at law of Francis Bourke as grantees. Under the laws of this state, James Bourke, the father of Francis, was his sole heir at law, and title at once, upon the death of Francis, was devolved upon James, subject only to the legal debts of his ancestor. Probate of the estate of Francis Bourke was had in the probate court of Marquette county, Michigan. James Bourke, heir at law, was represented in those proceedings, and in the settlement of the estate, by Edward S. Hardy, his attorney in fact, who acted throughout in that capacity. The common source of title of both plaintiff and defendant is Francis Bourke. Defendant claims title through a deed executed and delivered August 7, 1884, by Edward S. Hardy, as attorney in fact for James Bourke, which purports to convey to defendant the title which James got as the sole heir of his son Francis. Possession thereunder was at once taken by the grantee, defendant herein, who has ever since been in the actual, notorious and exclusive, adverse possession, and openly exercising ownership of the premises, and

during all that time has been acknowledged and recognized as the owner by Louis Barron, owner of the remaining one-third interest, and by other persons acquainted with the property. Plaintiff's title is evidenced by a deed bearing date January 8, 1903, and executed by Dominic Bourke and Bridget Bourke his wife, Dominic claiming to be, and declaring that he is, the brother of Francis and the son and sole heir at law of James Bourke, theretofore deceased.

It is to be observed that if Edward S. Hardy was the attorney in fact of James Bourke and during the existence of the power conveyed to defendant, assuming his deed to have been properly executed by the donee, defendant has the better title, as his deed was executed and recorded and possession thereunder taken during the lifetime of James Bourke and long before the execution and delivery of plaintiff's deed. The real controversy then is whether Hardy was the attorney in fact of James Bourke, whether the letter of attorney delegated to him the power to convey the premises, and whether the deed of conveyance which Hardy executed was such as to transfer the title of the donor. Such additional facts as are material and necessary to the decision will be mentioned in connection with the various objections which plaintiff makes to defendant's title.

No power of attorney from James Bourke to Edward S. Hardy was recorded in Boulder county. Section 438, 1 Mills' Ann. Stats., reads:

"In order that all conveyances which are executed by any attorney in fact, may be seen to be executed with the assent of the grantor, the power of attorney of the attorney in fact, duly proved or acknowledged, shall be (if it has not been) recorded in the same office in which the conveyances them-

selves are required to be recorded." Plaintiff construes this section as mandatory in its character and says that a title, depending upon a deed executed under a power of attorney, cannot be passed unless that written instrument, duly proved and acknowledged, is actually recorded in the proper office, and that, if not so recorded, parol evidence of its execution and contents is incompetent. If this section stood alone, plaintiff's position might be correct and the authorities from other states which he cites might be pertinent. Sections 445 and 446 of 1 Mills' Ann. Stats., upon the same subject, construed in connection with section 438, as we think should be done, leads us to a different conclusion.

These sections are:

"445. Powers of attorney for the conveying, leasing, or releasing of any lands, tenements or hereditaments, or any interest therein, may be acknowledged or proved in the same manner as deeds.

"446. All deeds, conveyances, agreements in writing of, or affecting title to real estate or any interest therein, and powers of attorney for the conveyance of any real estate or any interest therein, may be recorded in the office of the recorder of the county wherein such real estate is situate, and from and after the filing thereof for record in such office and not before, such deeds, bonds and agreements in writing shall take effect as to subsequent *bona fide* purchasers and incumbrancers by mortgage, judgment or otherwise not having notice thereof."

-In the absence of actual knowledge, or equivalent notice, by one who asserts a hostile title, an adverse title derived through a power of attorney is not good unless recorded before the hostile right was acquired. But if, as is true in this case, the owner of such adverse interest has actual knowledge, or its

equivalent, of the existence of an unrecorded power of attorney, he is not an innocent purchaser or encumbrancer and cannot be heard to object that the power of attorney was not actually recorded before his rights were acquired. It is true that in the concluding portion of section 446 powers of attorney are not specifically included among the instruments which shall not take effect as to subsequent *bona fide* purchasers unless recorded, yet we think they are included in the expression "deeds and agreements in writing," especially since by section 445 a power of attorney may be proved in the same manner as deeds. That a deed, though not recorded, can be proved and is good as to one with actual knowledge of it, is too plain for argument. The fact, therefore, that the record does not show a recording of a power of attorney from James Bourke to Edward S. Hardy does not of itself defeat defendant's title, for plaintiff knew of defendant's claim under the Hardy deed and that such a power existed, and that defendant was in actual possession, asserting ownership thereunder.

Plaintiff, however, assuming that the absence of the record of this power is not fatal to defendant's title, contends, nevertheless, that proper proof of its execution, existence and contents was not made. Let us see what the facts are. The agreed statement of facts is not as specific as it should be in a case of this character. No objection, however, was made by plaintiff that the statement is somewhat in the nature of a conclusion from particular facts rather than a recital of specific facts themselves upon which the conclusion is based. We are not disposed, in order to reverse what seems an equitable decree, to raise objections that might have been, but were not, interposed by plaintiff at the hearing. The parties themselves call the statement one of facts and not

conclusions. We shall, therefore, give to the agreed statement the effect, as proof, which the parties and the court attributed to it. Defendant, some time before he received his deed from Hardy, the attorney in fact, was in Marquette county, Michigan, while the estate of Francis Bourke was in process of settlement, and then learned that Mr. Hardy purported to be, and in fact was, acting as the representative of James Bourke, upon whom the legal title of the mine was devolved, in the settlement of the estate of his son Francis, the patentee. Hardy then showed to defendant and the latter's brother, who was county clerk of the county, a written instrument which, on its face, recited that it was a power of attorney from James Bourke to Edward S. Hardy; and, while defendant does not recall its exact language or all the powers therein conferred, according to his best recollection and belief he says it did confer, among other things, in apt language, upon Hardy, full power and authority to sell, and execute all necessary instruments of conveyance of, the property real and personal belonging to James Bourke, as the heir at law of his son Francis, and that such power was executed and acknowledged in the proper and legal manner and by competent authority. Defendant gives as a reason for his recollection that at that time he was about to take, and in fact afterwards did receive, from Mr. Hardy, a substitution of some portion of the latter's authority under that instrument, and that he and his brother then examined the same for the purpose of determining the nature and extent of the power conferred. Defendant gave a valuable consideration for the deed executed by Hardy, in good faith believing that Hardy had the power to convey, and that he was thereby acquiring the fee simple title absolute to the two-thirds interest in the Critic lode. James Bourke died about twelve

years after defendant obtained his deed and thereafter never made any claim of ownership or interest in the mining claim adverse to defendant, notwithstanding the deed was put on record and possession actually taken of the mine. Defendant at once, upon the delivery of his deed, took possession of the premises as hereinbefore stated, and ever since has exercised acts of ownership of, and paid all taxes legally assessed against, the mine. In his deed Hardy recites that he is the attorney in fact for James Bourke; in his letters, and in other documents pertaining to this sale, he declares that the power of attorney from James Bourke empowered him to sell and convey his principal's interest in this mine, and, in his deed, he purports to convey it under such authority. In writing to defendant he refers to the fact that in 1880 he showed defendant the power of attorney when defendant was in Michigan. Sufficient proof of the loss of the power, and the unsuccessful diligent search for it, was made, to authorize parol proof of its execution and contents, if that sort of proof is competent.

Plaintiff says first that this evidence is not sufficiently full or definite to warrant a finding that James Bourke ever gave a power of attorney to Hardy. The deed executed by Hardy recites, as we have seen, that Hardy is the attorney in fact for James Bourke, the heir at law of Francis Bourke. Plaintiff contends that the Hardy deed, even assuming the existence of the power under which it was executed, does not purport to convey the title of James Bourke, but only that of Hardy himself. Yet, if sufficient to pass Bourke's title, he says it is not even *prima facie* evidence of the existence of the power, because it is merely the declaration of an agent, which is not admissible to establish agency. Neither the fact of agency nor the extent of the

authority can be established by the mere declaration, or admission, of the alleged agent; but when there is independent evidence of the existence or ratification of the agency, from which a jury might find its existence, the declarations and admissions of the agent within the scope of his authority, during its continuance and in regard to transactions depending at the time, are competent against his principal and as to all collateral matters. Here we have some evidence that a power of attorney was executed and delivered and that it was in possession of the donee, who was acting under it, and that it contained apt language for the conveyance by him of real property of his principal, and that the instrument was signed and acknowledged by competent authority.

We think, therefore, under this evidence, that Hardy's declarations and admissions are competent against plaintiff, made as they were within the scope of his agency, in regard to the sale then depending, since plaintiff is not a stranger, but claims title from the common source. Hardy's deed and his declarations therein and in other writings, in connection with the testimony of defendant as to having seen Hardy's authority, is at least *prima facie* evidence that Hardy had authority for executing the deed. *Machebeuf et al. v. Clements,* 2 Colo. 36 (affirmed in 92 U. S. 418), at page 44, is exactly in point. It was there held that, as against one claiming under the same principal, the conveyance and declarations of an attorney in fact of that principal are *prima facie* evidence. It has been held that a power of attorney to convey land may be presumed from the recitals in an old deed, when coupled with long delays of the owners in asserting an adverse claim.—1 Am. & Eng. Enc. of Law (2d ed.) 965. As to admissions of an agent *Ibid.,* p. 690.—*Lee v. Englebach,* 18 Colo. 106. Since, therefore, this evidence is not in any wise

overcome, we conclude that Hardy's deed, as attorney in fact, passed the title to these premises. Being executed and delivered and on record before the inception of plaintiff's rights, it necessarily follows that plaintiff's claim under the deed from Dominic Bourke is junior.

The further contention of plaintiff that the Hardy deed conveyed only Hardy's interest, if any, and not the interest or title of his principal, James Bourke, because. Hardy is therein described as the party of the first part and signs himself as attorney in fact for his principal, instead of describing Bourke as the first party and signing the name of Bourke by himself as attorney in fact, is not tenable. Confessedly Hardy owned no interest in the mine. While the language used in the recital, and the method of signing may be irregular or unusual, and other approved forms may be usual and safer, it is quite apparent that the intention was to transfer the title of the principal. A well-reasoned case, *Donovan v. Welch,* 11 N. D. 113, very like the one at bar in its facts, upholds this as the deed of Bourke the principal.

Plaintiff insists that no significance should be given to the fact that James Bourke during his lifetime, and after the deed from Hardy to defendant was executed, did not question the latter's title. The argument is that James Bourke, not being a resident of the United States but a citizen of Ireland and never having been in this country, is not supposed to know that defendant took possession under the deed or assumed to be the owner of the mine. A non-resident, like a resident, is charged with constructive knowledge of public records and actual possession. In addition to this the estate of Francis Bourke, who is the common source of title, was probated in Marquette county, Michigan, and we are

justified in assuming that his heir at law, James
Bourke, who was the father and the ancestor of
Dominic, through whom the plaintiff claims title, had
legal notice of the court proceedings. It is an en-
tirely warranted inference, as against plaintiff, that
the attorney in fact did his duty to his principal and
that James knew from him that his son Francis left
this mining property, and we may also assume that
James was advised by his agent, Hardy, of the
settlement of the estate and the disposition which
he, under the power of attorney, had made of the
property. It would therefore seem that there is
evidence from which the court might justly hold that
James Bourke by his conduct and silence ratified the
act of Hardy in making the conveyance.—1 Am. &
Eng. Enc. Law (2d ed.) 966.

We have carefully read the other arguments and
considered the legal propositions advanced by plain-
tiff's counsel. Without specially referring to them,
we think they are either not sound, or that their
resolution in his favor would not change the legal
effect of the approval by us of the holding of the
trial court that defendant's title as owner in the fee
was established by the evidence.

It certainly comports with a lively sense of jus-
tice to be able to reach the conclusion that defendant
is to be protected in his claim to this property, which
he has for twenty years openly exercised. The
plaintiff's case does not appeal strongly to the con-
science of a chancellor. Before he acquired his in-
terest he was thoroughly conversant with defend-
ant's claim and his entire good faith, and while the
record did not disclose a perfect chain of title in de-
fendant, plaintiff knew that defendant was asserting
title under the Hardy deed, and was in and had been
in exclusive adverse possession of the property for
many years, exercising ownership, and had paid all

taxes legally assessed upon it.   Notwithstanding this knowledge, plaintiff received his deed, paid the purchase price, and thereby took his chances of defendant's being able to furnish, by parol evidence, proof of the execution and existence of the power of attorney whose absence from the record was the only flaw in his title, and whose presence there, or parol proof of its existence and execution, would perfect it.

Being of the opinion that there is legal and sufficient evidence upon which to sustain the findings and decree, we shall affirm the same.        *Affirmed.*

Chief Justice Steele and Mr. Justice Musser concur.