WILLIAM H. BAILEY *vs.* TRUSTEES OF METHODIST EPISCOPAL CHURCH OF FREEPORT.

Cumberland. Opinion December 3, 1880.

*Trustees of Methodist Episcopal Church, authority of. Ultra vires. Corporation.*

By the provisions of R. S., c. 12, § 19, "the trustees of the Methodist Episcopal church, are so far a corporation as to take, in succession, all grants and donations of real and personal estate, made to their churches or to them and their successors."

Such a corporation has no authority to create a debt for the erection of a meeting house.

Any contract made by such a corporation for materials which entered into the construction of a meeting house is *ultra vires* and cannot be enforced against it.

ON EXCEPTIONS from the superior court, Cumberland county.

The opinion states the case.

*H. G. Sleeper*, for the plaintiff.

The defendants are so far a "corporation as to take in succession all grants and donations of real and personal estate made to their churches or to them and their successors." R. S., c. 12, § 19.

In *Stebbins* v. *Jennings*, 10 Pick. 171, the court speak of a similar body who are authorized to take "grants and donations, real or personal," and say that these terms "seem comprehensive

enough to embrace any mode by which property can be acquired."

Upon the same principle these trustees, the defendants, can take, under any mode in which property may be acquired, a meeting house for the benefit of their church, and as incident thereto make contracts for the land, labor and materials.

The authorities cited by counsel on the powers and limitations of corporations are not in point.

Even if the contract sued was *ultra vires*, the defendants having received the benefit of it are liable to the extent of that benefit. *Franklin Co.* v. *Lewiston Savings Bank*, 68 Maine, 43 ; *The Episcopal Charitable Society* v. *The Episcopal Church in Dedham*, 1 Pick. 372.

*John J. Perry*, for the defendants, cited : *Winslow* v. *Kimball*, 18 Maine, 308 ; *Coffin* v. *Rich*, 45 Maine, 507 ; *Penobscot Boom Co.* v. *Lamson*, 16 Maine, 224 ; *Andrews* v. *Union M. F. Ins. Co.* 37 Maine, 256 ; *Plummer* v. *Penobscot Lumb'g Ass'n*, 67 Maine, 363 ; *Franklin Co.* v. *Lewiston Ins. for Savings*, 68 Maine, 43 ; *Penn. R. R. Co.* v. *Canal Comr's*, 21 Pa. 9 ; 9 Howard, 172 ; *Knowles* v. *Beatty*, 1 McLean, 41 ; *Beaty* v. *Knowler*, 4 Peters, 152 ; *Farnham* v. *B. C. Co.* 1 Sum. 46 ; *Bangor Boom Corp.* v. *Whiting*, 29 Maine, 123 ; *Berry* v. *Yates*, 24 Barb. 199 ; *Epis. Char. So.* v. *Epis. Church*, 1 Pick. 371 ; *Salem Mill Dam Corp.* v. *Ropes*, 6 Pick. 32 ; *Bank of Augusta* v. *Earles*, 13 Peters, 519 ; *T. R. R. Co.* v. *Kneeland*, 4 How. 16 ; *Stebbins* v. *Jennings*, 10 Pick. 171 ; *Silsby* v. *Barlow*, 16 Gray, 329 ; *Weld* v. *May*, 9 Cush. 181 ; *Pearce* v. *M. & I. R. R.* 21 Howard, 441 ; 1 Md. Ch. Decisions, 542.

VIRGIN, J. This bill of exceptions is exceedingly succinct, and no paper *dehors*, except the writ and pleadings, is made a part of the case.

Confining our attention to the case as it is made up and certified by the presiding justice (*Allen* v. *Lawrence*, 64 Maine, 175), the action is assumpsit on an account annexed for lumber furnished in April, May, June and July, 1875, for the construction of a meeting house for the Methodist Episcopal church of Freeport.

The judge of the superior court tried the case without the intervention of a jury, subject to exceptions in matters of law, and found : 1. That, during the months above mentioned, the persons named in the bill of exceptions were the duly constituted trustees of that church; 2. That they were then erecting a meeting house there for the use of that society, on a lot of land which had been granted to the trustees ; 3. That the plaintiff, on the order of the trustees, furnished the lumber sued for which was used in the construction of the meeting house ; and 4. That since that time, the meeting house has been occupied by the society as a place of worship and has been under the control of the trustees — the defendants.

Upon these facts thus conclusively established (*Mosher* v. *Jewett*, 63 Maine, 84), the presiding judge ruled : 1. That the trustees were a corporation for the purposes indicated in R. S., c. 12, § 19 ; and 2. That they had authority to erect a meeting house and contract the debt sued for. Thereupon he decided that the defendants did promise, and ordered judgment in behalf of the plaintiff for the value of the lumber remaining unpaid.

In their brief statement, the defendants distinctly set up the defence of *ultra vires*, and now contend that the second ruling is in direct conflict with that doctrine, and they cite numerous authorities which reiterate, in various modes of expression, the general principle, so frequently decided, that it has become elementary, that the powers of a corporation are limited to those expressly or impliedly conferred by its charter or the statutes under which it is instituted ; and that every one dealing with a corporation is presumed to know the full extent of its powers.

On account of the rapid multiplication of corporations, their vast resources and the immense influence which they exert upon the business of the country, the subject of *ultra vires* has elicited much discussion in the courts throughout the country within the past few years. And while many courts have protestingly followed the strict construction of the general rule, others, so far as trading and business corporations generally are concerned, have very materially relaxed the strictness of the rule by the liberal interpretation given to charters and statutes creating

corporations and have thus allowed the classes of corporations mentioned, to enter into contracts, and engage in transactions which are simply auxiliary to its main business.

So a manufacturing corporation which had given, without authority, an accommodation note, was held estopped to set up the defence of *ultra vires* in an action by a *bona fide* indorsee; the reason assigned being that such a corporation had power to make negotiable notes for the transactions of its legitimate business, and that the indorsee could not be presumed to distinguish between the *intra vires* and the *ultra vires* notes. *Monumental Nat. Bank* v. *Globe Works*, 101 Mass. 57. But it would be otherwise provided the corporation was not authorized to give its notes for any purpose, for the reason that all persons dealing with a corporation, are bound to take notice of the extent of its chartered powers. The same principle is applicable to contracts not negotiable. *Mon. Nat. Bank* v. *Globe Works*, *supra; Bissell* v. *Mich. S. & N. Ind. R. Co.* 22 N. Y. 289, 290.

Moreover there is another class of cases where courts, to avoid the harshness of the general rule, have enforced recovery where money or other property has been received by corporations through executed contracts which were *ultra vires*, among which is *Morville* v. *Am. Tr. Soc.* 123 Mass. 129,137, and cases there cited. Also *Epis. Char. Soc.* v. *Epis. Church*, 1 Pick. 372.

But in cases where there is an entire want of power to make a particular contract under any circumstances, or for any purpose, as distinguished from those mentioned in next the last paragraph, all concur in declaring the doctrine of *ultra vires* a valid defense, even by regular business corporations. And such contracts cannot be made valid by ratification. *Thomas* v. *West Jersey R. R. Co.* 21 Alb. L. J. 409 (U. S. S. C.), and cases there cited. In *Eastern R. Co.* v. *Hawkes*, 5 H. L. Cas. 331, 373, Lord St. Leonard expressed himself as disposed "to restrain the doctrine of *ultra vires* to clear cases of excess of power, with the knowledge of the other party, express or implied from the nature of the corporation and of the contract entered into."

If this view be correct in relation to railroads, manufacturing and other corporations, *a fortiori*, should it be applied to simple

*quasi* corporations like the defendant, which is not a body corporate acting under a charter, or organized under a general statute, but a few officers of an unincorporated religious society, upon whom, *ex officiis*, the statute has conferred a single attribute of a corporation, that of succession, and in the language of Mr. Justice MILLER (in 13 Wall. 720), making "the trustees merely the title holders and custodians of the church property;" or in the language of the statute, constituting them "so far a corporation as to take, in succession, all grants and donations of real and personal estate made to their church or to them and their successors." R. S., c. 12, § 19.   That such a *quasi* corporation, even, has the incidental power to sue and be sued in the protection and defense of the church property, notwithstanding the clause in the original statute conferring such power expressly was dropped out in the revision of the statute, there can be no doubt; (Greene's Brice's *Ultra Vires*, 6) ; but that such a corporation has any power, under any circumstances, to create a debt for the purpose of erecting a meeting house, we cannot believe was contemplated by the legislature.   CH. J. SHAW speaking of a similar statute in Massachusetts must have entertained the same view when he said : "And although the deacons are vested by statute with limited corporate powers to take gifts and donations, and hold property in succession, for the benefit of the church, yet we are not aware of any authority they have to issue promissory notes, to bind their successors or the church, or to enter into executory contracts, negotiations, or speculations, although they may hope and expect that they will prove profitable to the church." *Jefts* v. *York*, 10 Cush. 394–5.

This view will further appear when the object of the statute is considered in what follows, much of which is in the language of the same learned jurist.

The statutes relating to this subject differ in the various states. In some a large majority of such societies are incorporated, while in others, as in this State, the societies themselves, (using church and society as synonymous), are incorporated bodies with certain officers, on whom is conferred by statute, a corporate succession, holding the legal title of the property.   In the Methodist Episcopal Church such officers are called trustees.

The object of the statute is to prevent property belonging to the church, but held by the trustees, from descending, at the decease of the latter, to their heirs, and save the trouble and expense of causing new trustees to be appointed by the courts, and conveyances made to the new trustees. This the law effects by clothing the persons holding the office of trustees for the time being, though frequently changing by death, removal or otherwise, with the character of perpetuity and unbroken continuance, which is the peculiar attribute of a corporation. *Weld* v. *May*, 9 Cush. 186. And they take not only property given to the trustees in terms but as such may be given to their church in terms. R. S., c. 12, § 19. The statute does not declare what constitutes a church, who are its trustees, or how they shall be chosen and qualified to take and hold the estate in succession — these matters being left to the well known, established and recognized discipline and usage of the denomination. *Parker* v. *May*, 5 Cush. 346. In other words, the theory of the law is not that churches or other aggregate bodies, corporate or incorporate, select persons to be a corporation, but being chosen to offices recognized by law and usage, the law annexes, *propriore vigore*, the corporate capacity to the office. They hold *ex officiis* and not otherwise. No conveyance is necessary to transmit the property, when once vested, from the incumbent to his successor, whenever and however the change of trustees may occur, those going out ceasing to hold while those coming in becoming forthwith invested; so that in contemplation of law, the title always remains in the trustees for the time being. *Earle* v. *Wood*, 8 Cush. 451–2. *Parker* v. *May*, *supra*.

Such being the character of the defendant corporation, we entertain no doubt that the statute never contemplated that it should possess the power to create any debt for any such purpose, and we doubt very much if the plaintiff himself contemplated running up such a debt when he furnished the lumber and undertook to build the house. Being one of the trustees, he knew all the facts and circumstances, and should have been warned by the statute.

And the fact that the society has occupied the house cannot avail the plaintiff. *Ruby* v. *Abyssinian Soc.* 15 Maine, 306.

*Morville* v. *Am. Tr. Soc. supra,* and *Epis. Char. Soc.* v. *Epis. Church,* are entirely different in principle from the case at bar, among other things the defendants there being regularly chartered corporations.

*Exceptions sustained.*

APPLETON, C. J., WALTON, PETERS, LIBBEY and SYMONDS, JJ., concurred.