Per Curiam.
Upon the first argument on this appeal, one member of the court was disqualified from sitting; and the remaining judges were equally divided upon the question whether an action of this character can be maintained by the attorney general in the name of the people. The case was thereupon transferred to the second" division, where it was again argued and a decision handed down on October 1, 1892, contemporaneously with the dissolution of that branch of the court. It was there held by a divided court, that the action in its present form was maintainable, and the judgment of the general term, affirming the judgment of the special term, which dismissed the plaintiffs’ com *847 plaint, was reversed and a new trial ordered upon the ground that the trustees of a mining company, incorporated under the act of 1848, cannot, even with the consent of a majority of its stockholders, transfer all of its property and assets to another corporation, avowedly incorporated for the purpose of acquiring the same and carrying on its business, and receive in payment therefor the stock of the latter corporation.
It appears that the purchasing company is a foreign corporation, but we do not understand that it is claimed the case would be different if it were a domestic one. Upon the transfer the purchasing corporation assumed all the debts of the defendant corporation, and. it is conceded that the defendant corporation has virtually abdicated its franchises and placed itself in a position where it is and will be unable to carry on the business for which it was incorporated.
The defendants now move for a reargument, and their counsel,, with commendable candor, concede that under the rules which prevail in this court, and which control the determination of such motions, all discussion is foreclosed of the question of the maintainability of this action by the People, and also of the question that the directors' of a domestic corporation, which is engaged in a profitable business, cannot, without the assent of all the stockholders, close out its business; transfer its entire property to another corporation; pay its debts; distribute its remaining assets among its stockholders, and surrender its franchise to the state. But it is contended that the rule is otherwise with respect to a. non-paying corporation, and that the trustees of such a company, when they find the business to be unprofitable, and it is shown that it cannot be run except at a loss, have the right and that it. is perhaps their duty to suspend the business of the corporation, dispose of its property and wind up its affairs, if the majority of the "stockholders consent thereto,, and that an action will not lie-against them under §§ 178 L-2 of the Code for mismanagement, or an abuse of trust, or for an unlawful application of the corporate funds, if they in good faith adopt such a course. -In support of this position," the defendant’s counsel cite the decision of the-second division in the case of Skinner, as Trustee s. Smith et al., handed down at the same time with the decision in the present case, in which the learned chief judge of that division, in concluding his opinion, says: “ The right of a manufacturing company to discontinue its operations when they have become unprofitable for the purpose of protecting shareholders from further loss, does-not admit, we think, of doubt;.” and several cases are cited, but none in the courts of this state, and we find no other expression on the subject, except a dictum of the present chief judge of this court, in Denike v. N. Y. & R. Lime & Cement Co., 80 N.Y., 606, where he says: “ All the stockholders uniting might undoubtedly surrender the franchises of. a corporation and work its dissolution.” The query, however, is added “ But can a portion of them do this in the absence of. statutory authority? ”
It is insisted that there is a plain distinction in this respect betweeen the case of a business corporation which has the means or *848 the ability to carry on its business at a profit, and. the case of such s, corporation having no public duties or functions to perform, which finds itself unable, from no fault on the part of its managers to conduct its business without loss, and that the court in disposing of this appeal overlooked this distinction, and.hence the propriety of this motion for a reargument.
Where such a motion is addressed to a court, differently constituted from the one which decided the appeal, but possessed of ■co-ordinate authority, as it is in the present case, it must be, obvious that there are difficulties and embarrassments in the way of its disposition which would not exist if ,, a rehearing was sought in the same tribunal where the decision complained of was made. We are not prepared to say that the distinction which the defendants rely upon does not exist, and it may be that if the attention ■of the court which decided this appeal could he specially called to the point, if it was not in fact done upon the argument, the distinction would be recognized, and the appropriate relief granted. But we deem it unnecéssary for the proper preservation of. the defendants’ rights to express or intimate any opinion on the subject. A new trial has been ordered. The question can now be distinctly and specifically raised in the court below, and if the decision there is adverse to the defendants a new appeal will bring it here in such a form that it can be heard and disposed of by this court as if it were res nova, provided it turns out, as the defendants contend, that it was not considered and distinctly decided upon the present appeal.
The motion for a reargument is, therefore, denied, but without costs.
All concur.