THE BATH GAS LIGHT COMPANY, Respondent, *v.* JOHN CLAFFY, Appellant, Impleaded with Others.

1. CORPORATIONS — ULTRA VIRES CONTRACT — LEASE — RENT. The defense of *ultra vires* will not defeat an action brought by a lessor corporation to enforce, to the extent of past due rent and unpaid taxes, a bond executed to it by a lessee corporation and sureties to secure performance of the terms of a lease, not *malum in se* or expressly prohibited by law, but not within the expressed or implied powers of the lessor corporation, and under which the lessee has occupied and enjoyed the leased premises and property, where the enforcement of the contract is to indemnify the lessor corporation and its stockholders for the deprivation of the use of their property during its past possession by the lessee under the unauthorized lease.

2. "ILLEGAL" CONTRACT. A contract made by a corporation without legislative sanction, and hence in excess of its powers, but involving no moral turpitude and offending against no express statute, is not necessarily "illegal" in such a sense as to prevent the maintenance of any action upon it.

3. ENFORCEMENT OF PAYMENT OF RENT FOR OCCUPATION HAD UNDER AN ULTRA VIRES LEASE. Where, under a lease of all its property, made by one corporation to another (such as a lease of its plant by one gas light company to another) beyond the powers of the lessor, the lessee has occupied and used the property and discharged all the lessor's obligations the public, without intervention by the state, and possession has been restored to the lessor and the contract terminated as to the future, the lessee is, as between the parties, bound by the contract so long as he

remained in possession, and recovery of the past due rent for that period may be obtained by action on the lease, although the lease may be void as to the public.

4. ENFORCEMENT OF FOREIGN ULTRA VIRES CONTRACT. In an action in this state upon an *ultra vires* corporation contract of another state, the contention that the contract is void and non-enforceable by the law of such other state will not prevail where the law of the other state does not appear by the record; but the courts of this state will determine the case according to the law of this state as established, or, in the absence of controlling authority, as justice, having regard to all interests, may seem to require.

*Bath Gas Light Co.* v. *Claffy*, 74 Hun, 638, affirmed.

(Argued June 19, 1896; decided December 1, 1896.)

APPEAL from a judgment of the General Term of the Supreme Court in the second judicial department, entered December 13, 1893, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Circuit, a jury having been waived.

The nature of the action and the facts, so far as material, are stated in the opinions.

*Abram J. Rose, L. Laflin Kellogg* and *Alfred C. Petté* for appellant. The contract leasing, for a term of years, all the property and corporate rights of the plaintiff to the defendant, the United Gas, Fuel and Light Company, is void as against public policy. (*People* v. *N. R. S. R. Co.*, 121 N. Y. 582; *N. O. G. Co.* v. *L. L. Co.*, 115 U. S. 650; *Gibbs* v. *C. G. Co.*, 130 U. S. 396; 27 Am. & Eng. Ency. of Law, 384; *B. G. L. Co.* v. *U. F. G. Co.*, 85 Me. 532; *Thomas* v. *W. J. R. R. Co.*, 101 U. S. 71; *P. R. R. Co.* v. *S. L., A. & T. H. R. R. Co.*, 118 U. S. 317; *S. L. R. R. Co.* v. *T. H. R. R. Co.*, 145 U. S. 393; *C. T. Co.* v. *P. P. C. Co.*, 139 U. S. 24; *Black* v. *D. & R. C. Co.*, 24 N. J. Eq. 465; *M. R. R. Co.* v. *B. R. R. Co.*, 115 Mass. 247; *Hay* v. *O. O. & F. R. V. R. R. Co.*, 64 Ill. 422; *People* v. *C. G. T. Co.*, 130 Ill. 286.) The lease in question being void, the bond given for its performance is also void. (3 Am. & Eng. Ency. of Law, 889; *Swift* v. *Beers*, 3 Den. 70; *Leavitt* v. *Palmer*, 3 N. Y. 19–36; *Vose* v. *Cockcroft*, 44 N. Y. 415; *Foley* v. *Speir*,

4

100 N. Y. 552.) The parties to the lease and the bond are not estopped from questioning their legality even in so far as they had become partially executed. ( *W. A. Co.* v. *Barlow,* 63 N. Y. 62; *Thomas* v. *W. J. R. R. Co.,* 101 U. S. 71; *Arnot* v. *P. & E. C. Co.,* 68 N. Y. 558–569; *Peck* v. *Burr,* 10 N. Y. 294; *Saratoga Co. Bank* v. *King,* 44 N. Y. 87; *Woodruff* v. *E. R. Co.,* 93 N. Y. 609.) Even if it could be shown that the lease in question is not contrary to the public policy of this state, it has been expressly held, under the law of the state of Maine, the place where the lease was made and was to be performed, that such contracts are against the public policy of that state and void, and the lease being void where it was made, it is void everywhere. (*Pratt* v. *H. R. R. R. Co.,* 21 N. Y. 305; *Staples* v. *Nott,* 128 N. Y. 403; *Dickinson* v. *Edwards,* 77 N. Y. 573; *L. & G. W. S. Co.* v. *P. Ins. Co.,* 129 U. S. 397; *E. L. Ass. Society* v. *Clements,* 140 U. S. 226; *United States* v. *North Carolina,* 136 U. S. 211; *Andrews* v. *F. Ins. Co.,* 37 Me. 356; *B. B. Co.* v. *Whiting,* 29 Me. 123; *Dailey* v. *M. E. Church,* 71 Me. 473; *S. L. R. R. Co.* v. *T. H. R. R. Co.,* 145 U. S. 393.) The plaintiff is not entitled to recover against this defendant as surety in this or any action, on a *quantum meruit* in disaffirmance of the contract. (*Southwick* v. *F. Nat. Bank of M.,* 84 N. Y. 420; *Saratoga Co. Bank* v. *King,* 44 N. Y. 87; *Arnot* v. *P. & E. C. Co.,* 68 N. Y. 558.) The plaintiff is not entitled to recover in any event from this defendant the item charged for use and occupation of the premises from May 1, 1890, to August 2, 1890, the date of eviction, to wit, $700, for the reason that the eviction was in the middle of the term between the two rent days, and prior to the date when the rent for that term fell due. ( *Vanderpool* v. *Smith,* 4 Abb. Ct. App. Dec. 463; Taylor's Land. & Ten. § 378; *Giles* v. *Comstock,* 4 N. Y. 275; *Pendleton* v. *Dyett,* 4 Cow. 582; *Christopher* v. *Austin,* 11 N. Y. 218.)

*James McKeen* for respondent. Assuming that the lease was *ultra vires*, the plaintiff nevertheless was entitled to the

judgment rendered. A lessee is estopped from defeating a recovery on the contract by the plea of *ultra vires*. (*Woodruff* v. *E. R. Co.*, 93 N. Y. 609; *R. L. R. Co.* v. *Roach*, 97 N. Y. 378; *Starin* v. *Edson*, 112 N. Y. 206; *Mayor, etc.*, v. *Huntington*, 114 N. Y. 631; *City of Buffalo* v. *Balcom*, 134 N. Y. 532; *Seymour* v. *S. F. C. Assn.*, 144 N. Y. 341; *Carpenter* v. *B. H. G. M. Co.*, 65 N. Y. 43.) The rule of estoppel applicable to the lessee is applicable to the surety, especially where, as here, the surety was a stockholder and officer in the lessee company and a participant in the benefits acquired and retained under the lease. (*Kimball* v. *Newell*, 7 Hill, 116; *Remsen* v. *Graves*, 41 N. Y. 471; *Mason* v. *Nichols*, 22 Wis. 360.)

ANDREWS, Ch. J. A brief statement of the material facts will present the important question arising upon this appeal.

The plaintiff is a Maine corporation created under a special law of that state, passed in 1853, for the purpose of supplying gas for the lighting of the streets and buildings in the city of Bath. The United Gas, Fuel and Light Company is also a Maine corporation, organized in 1888, under a general law, by the execution and filing of a certificate, which in pursuance of the law of Maine was first submitted to and approved by the attorney-general, who certified that it was conformable to the Constitution and laws of that state. The certificate, among other things, specified that the corporation was organized to " manufacture, lease, purchase and otherwise acquire, deal in, manage, use and sell any and all machinery, fixtures, appurtenances, appliances and plants for using and furnishing light, heat and power, and for any and all purposes for which gas is now used." The plaintiff under its charter established a plant, and at the time of the execution of the lease now to be mentioned was engaged in supplying the streets and buildings in Bath with gas for lighting and other purposes. On the 10th day of November, 1888, it executed to the United Gas, Fuel and Light Company a lease of its property and franchises for the term of twenty-five years from November

1, 1888, at an annual rent of $2,500, which the lessee covenanted to pay in semi-annual payments on the first day of May and the first day of November in each year, and also the taxes assessed during the term. Provision was made for the payment by the lessor to the lessee, at the expiration of the term, of the value of any improvements or extensions made by the lessee, and it was also provided that the lessee should give to the lessor a satisfactory bond for the faithful performance by the lessee of its covenants in the lease. In pursuance of the provision last mentioned, the United Gas, Fuel and Light Company, on the same day, executed a bond with the defendants John Claffy and John T. Rowland as sureties, conditioned for the faithful performance by the company of the covenants in its behalf contained in the lease, which bond was delivered to and accepted by the plaintiff. The sureties were interested in the United Gas, Fuel and Light Company as stockholders, and Claffy (the appellant) was also a director. The lessee immediately, upon the execution of the lease, entered into possession of the demised property and paid the rent up to the 1st day of November, 1889, but defaulted in the semi-annual payment due May 1st, 1890, and on the 2nd day of August, 1890 (the rent remaining unpaid), the plaintiff re-entered and took possession of the demised property under a provision of the lease which authorized the lessor to enter and expel the lessee on failing to pay rent. The entry also was, as may be inferred, with the consent and, indeed, at the suggestion of the officers of the lessee. This action was brought on the bond against the lessee and the sureties to recover as damages the rent which fell due May 1, 1890, and the proportionate rent from that date up to August 2nd, 1890, and taxes which had been assessed against the property during its occupation by the lessee, which it had failed to pay.

The defendant Claffy alone appeared and defended the action. His sole defense to the general claim is that the lease was *ultra vires*, illegal and void, because (as is conceded) it was made without legislative sanction. If the court is compelled to accede to this contention by force of controlling authority,

or from considerations of public policy which overbear in the particular case the rules of ordinary justice, it will be our duty so to declare and to say that, although the United Gas, Fuel and Light Company received and enjoyed the undisturbed possession of the demised property under the lease until the re-entry, and accepted and appropriated the benefit of the contract, nevertheless, when called upon to pay the rent which accrued during its occupation, it may defend itself on the ground that the plaintiff, in making the lease, exceeded its power and escape the performance of its obligation, and, further, that the defendant Claffy may, for a like reason, avoid his guaranty.

The modern doctrine, as stated by Chancellor KENT, is to consider corporations as having such powers as are specifically granted by the act of incorporation, or as are necessary for the purpose of carrying into effect the powers expressly granted, and as not having any others. (2 Kent Comm. 299.) This doctrine is embodied in the Revised Statutes of New York, and the section relating to the subject is regarded as simply declaratory of the antecedent law. (1 Rev. St. 600, § 3.) It has been frequently stated that the validity of contracts of corporations is to be determined by comparing the contract made with the charter, and if upon such comparison it appears that the contract was neither expressly authorized, nor a necessary or reasonable incident to the exercise of the powers specifically granted, the contract is *ultra vires.* It seems that by the ancient common law a corporation could bind itself by a contract under its corporate seal, although the contract was not within the powers specified in the charter, and even although it contained negative words. This was in substance stated by BLACKBURN, J., in the case of *Riche* v. *Ashbury Railway Carriage Co.* (L. R. [9 Exch.] 262), citing as authority *Sutton's Hospital Case* (10 Co. 1). He said : "If there are conditions contained in the charter that the corporation shall not do particular things, and those things are nevertheless done, it gives ground for a proceeding by *sci. fa.* in the name of the crown to repeal the letters patent creating the corpora-

tion.  But if the crown take no such steps it does not, as I
conceive, lie in the mouth either of the corporation or of the
person who has contracted with it to say that the contract into
which they have entered was void as beyond the capacity of
the corporation." The case came before the House of Lords
on appeal from the decision of the Exchequer Chamber in favor
of the plaintiff, and its judgment is reported in L. R. (7 Eng.
& Ir. App.) 653. The action was to enforce a contract entered
into by the defendant, a corporation incorporated under the
Companies Act of 1862. The judgment of the Exchequer
Chamber was reversed on the ground that the contract sued
upon was expressly prohibited by the act under which the
defendant was incorporated, and was, therefore, void. The
House of Lords applied the general doctrine that an act done
in contravention of an express statute is utterly void.

The modern and reasonable doctrine that contracts into
which corporations may lawfully enter are such only as are
expressly or impliedly authorized by their charters, is never-
theless frequently disregarded in practice, and when this is
done and a corporation enters into a contract beyond its char-
tered powers, the question arises which has been the subject
of debate and of much difference of opinion, how shall
such a contract be treated by the courts, and whether the con-
tract can create any rights as between the parties which the
courts will enforce.  There are some propositions pertaining
to the general subject which are beyond dispute:  One is, that
a contract by a corporation to do an immoral thing, or for any
immoral purpose, or, to use a convenient expression, a con-
tract *malum in se*, is void and gives no right of action. The
doctrine, however, is not peculiar to contracts of corporations.
It has its root in the universal principle that persons shall not
stipulate for iniquity. Another principle of general recogni-
tion is that a corporation cannot enter into or bind itself by
a contract which is expressly prohibited by its charter or by
statute, and in the application of this principle it is immate-
rial that the contract, except for the prohibition, would be
lawful. No one is permitted to justify an act which the leg-

islature within its constitutional power has declared shall not be performed. The series of cases in this state, known as the Utica insurance cases, afford an apt illustration. It was held that the restraining acts which prohibited the exercise of banking powers, including the discount of paper, by other than banking corporations, rendered void securities taken on such discount by corporations not possessing banking powers, and this, although the object of the restraining laws seems to have been the protection of the chartered banks in the monopoly of banking.

But in not infrequent instances corporations enter into unauthorized contracts, which are neither *mala in se* nor *mala prohibita*, or when the only prohibition or restriction is implied from the grant of specified powers. It is this class of cases which open the field of controversy. Is such a contract performed by one party, but not performed by the other, void as between them to all intents and purposes, so that no recovery can be had under it against the party who has received the consideration for his promise, but neglects or refuses to perform it, or is it so tainted with illegality that the courts must refuse to recognize it under any circumstances or enforce its obligation, whether as to past or future transactions? There are certain English cases which are relied upon by those who maintain the strict view that contracts of corporations *ultra vires* are under no circumstances enforceable in the courts. The principal of these cases are *The East Anglian Railways Co.* v. *The Eastern Counties Railway Co.* (11 C. B. 775); *Macgregor* v. *The Dover & Deal Railway Co.* (18 Ad. & El. 618), and *The Ashbury Railway Carriage Co., Limited,* v. *Riche* (L. R. [7 Eng. & Ir. App.] 653). The *East Anglian* case seems to have been the first one in England which sustained a defense of *ultra vires* interposed by a corporation as a defense to an action at law on a contract made in the name of the corporation. (See opinion of ERLE, J., *Mayor of Norwich* v. *Norfolk Railway Co.*, 4 El. & Bl. 397.) The defendant in that case, a railway corporation owning and operating a railway, entered into a contract with

another railway company, by which it agreed to pay the
parliamentary expenses which might be incurred by the lat-
ter company in the effort to obtain authority to extend
its lines, whether the grant should be obtained or not, the
intention being to turn over the concessions if obtained,
together with the original line, to the defendant under a lease,
for which a parliamentary sanction was to be applied for.
The concessions were only in part obtained, and no authority
to make the proposed lease was given, and the project was
finally abandoned.    The action was brought on the contract
to recover the expenses incurred by the plaintiff, amounting
to more than twenty thousand pounds.    It was held that the
plaintiff was not entitled to recover, on the ground that the
statute under which the defendant was incorporated pre-
scribed that the funds of the defendant should be applied to
the purposes for which it was incorporated, and that it could
not legally enter into a contract involving the application of
any portion of its funds to other purposes.    The opinion relies
upon cases in equity brought by shareholders to restrain the
misapplication of corporate funds.    The case of *Macgregor* v.
*The Dover & Deal Railway*, and the case of *The Ashbury
Railway Carriage Company*, though differing in detail, were
decided upon the same principle, but in the latter case there
was an express statutory prohibition which was regarded as
prohibiting the contract there in question.    It is important
to observe that in each of these cases the action was
brought against the offending corporation, or those in
privity with it, to enforce the unauthorized contract while
it was still executory on the part of the corporation, and that
the effect of a recovery would have been to divert and appro-
priate the funds of the corporation by the action of the
courts, to unauthorized objects, to the prejudice of the legal
rights of stockholders and creditors.    Without questioning
these cases, it is quite apparent that they stand in justice
upon a very different basis from the action in this case, which
is brought by the corporation to enforce a contract, the
enforcement of which will indemnify the plaintiff and its

stockholders for the deprivation of the use of the property of the corporation, during its possession by the defendants, under the unauthorized lease. The Supreme Court of the United States seems to be committed to a construction of the doctrine of *ultra vires* which would sustain the defense in the case now before us. Several cases have arisen in that court upon leases of railroads made without legislative sanction, in which it has been held that such leases are void as between the parties, and that no action can be maintained thereon to recover the rent reserved, even during the occupation by the lessee under the lease. In *Thomas* v. *Railroad Company* (101 U. S. 71) the defendant had leased to the plaintiffs a railroad for a term of years, reserving an option to terminate the lease at any time during the term, and the defendant, in case such option should be exercised, covenanted to submit to arbitration the ascertainment of the loss and damage to the plaintiffs by reason of such termination of the lease, and to abide by the award. The defendant exercised the option and terminated the lease and resumed possession of the road, and an action was brought for a breach of the contract in respect to arbitration. The trial court determined the case against the plaintiffs on the ground that the contract sued upon was in substance a lease of the property and franchises of the defendant, which having been executed without legislative authority was illegal and void, and the Supreme Court affirmed the judgment. The action, it will be observed, was in substance an action to recover the value of the unexpired term of which the plaintiffs had been deprived by the action of the defendant, and the covenant sued upon was wholly executory. But, in the subsequent cases of *Pa. Railroad Co. et al.* v. *St. Louis, A. & T. H. R. R. Co.* (118 U. S. 290); *Oregon Railway & Nav. Co.* v. *Oregonian Railway Co.* (130 U. S. 1), and *St. Louis, V. & T. H. Railroad Co.* v. *Terre Haute & Indianapolis Railroad Co.* (145 U. S. 393), which were actions by lessor against lessee to recover rent accrued under leases of railroads during the occupation by the lessees, it was

broadly held that as the leases were made without legislative sanction they were void, and that no action could be maintained thereon to recover the past due rent, although the lessees were and still remained in undisturbed possession of the demised property. Mr. Justice Miller, in the case in 118 U. S., expressed a doubt whether there could be a recovery on a *quantum meruit*. We concur with the opinion expressed by two of the learned justices of the court, who dissented from the judgment in the case last cited, that the decision carried the doctrine of *ultra vires* to an unjust extent, and the rank injustice which, as it seems to us, these cases sanction, justifies the observation of Lord St. Leonards in the case of *The Eastern Counties Railway Co.* v. *Hawkes* (5 H. L. Cas. 347, 370), that " the safety of men in their daily contracts requires that the doctrine of *ultra vires* should be confined within narrow limits."

We concede that a railroad or other corporation invested with powers in the exercise of which the public have an interest, and empowered by reason of its *quasi* public character to do acts and exercise privileges peculiar and exceptional to enable it to discharge its public duties, cannot, as against the public, abdicate its functions or absolve itself from the performance of such duties through an unauthorized transfer of its property and franchises to another body or corporation. We have so held in the case of *Abbott* v. *The Johnstown, etc., Railroad Co.* (80 N. Y. 27), where it was decided that a railroad corporation which, without legal sanction, had leased its road, was not thereby exempted from liability as carrier to a passenger injured by negligence during the operation of the road under the lease.

There are obvious reasons of propriety and public policy, the prevention of monopolies, among others, aside from the mere question of capacity under their charters, which enforce the now well-settled doctrine, that leases by such *quasi* public corporations, to be valid and effectual, must be authorized by statute. But where, as in the present case, such an unauthor-

ized lease has been made, and the lessee has received and enjoyed the possession of the property under the lease, is there any public policy which requires that the lessee should be permitted to escape the obligation imposed by the contract to pay the rent reserved during the enjoyment of the property? It is doubtless true, as has been suggested, that the corporation in such cases cannot, without the consent of the state, change its obligations to the state or the public, and discharge itself from its public duties. But the law affords ample remedy for the usurpation by corporations of unauthorized powers, through proceedings by injunction or for the forfeiture of their charters. If a lease by a corporation, made in excess of its powers and without legislative sanction, is illegal in the ordinary and proper sense of the term, it may be properly conceded that no action could be maintained upon it. The lessee, when sued for the rent, could set up the illegality of the contract, and the defense would prevail, however inequitable the defense might be. But the term "illegal," which is frequently used to describe a contract made by a corporation in excess of its corporate powers, in most cases means simply that the contract is unauthorized, or one which the corporation had no legal capacity to make. Such a contract may be illegal in the true and proper sense, but it may also be one involving no moral turpitude and offending against no express statute. The inexact and misleading use of the word "illegal," as applied to contracts of corporations, *ultra vires* only, has been frequently alluded to. (COMSTOCK, C. J., *Bissell* v. *M. S. Railroad Co.*, 22 N. Y. 268; ARCHIBALD, J., *Riche* v. *Ashbury Railway Carriage Co.*, L. R. [9 Exch.] 293; LORD CAIRNS, *S. C.* on appeal, L. R. [7 Eng. & Ir. App.] 672.)

The lease now in question was not in any true sense of the word illegal. It was undoubtedly void as against the state. The parties to the lease assumed it to be valid. It was contemplated, as the provisions of the lease show, that the lessee would continue and extend the business before carried on by the plaintiff, and it is not suggested that it did not, during its occupation, discharge all the obligations to the public which

rested upon the plaintiff. The state has not intervened, and the possession of the property has now been restored to its original proprietors. The contract has been terminated as to the future, and all that remains undone is the payment by the lessee of the unpaid rent. We think the demands of public policy are fully satisfied by holding that, as to the public, the lease was void, but that, as between the parties, so long as the occupation under the lease continued, the lessee was bound to pay the rent, and that its recovery may be enforced by action on the covenant. Public policy is promoted by the discouragement of fraud and the maintenance of the obligation of contracts, and to permit a lessee of a corporation to escape the payment of rent by pleading the incapacity of the corporation to make the lease, although he has had the undisturbed enjoyment of the property, would be, we think, most inequitable and unjust. It has been suggested, to avoid the apparent injustice which would result from holding that there could be no recovery on the contract for past-due rent, that there might be a remedy on an implied contract to pay the value of the use of the property. But if the express contract was illegal in a proper sense, and the parties to the lease were guilty of a public wrong, so as to preclude a court of equity to entertain jurisdiction on the application of a lessor to be relieved from the lease and to be restored to the possession of the leased property, as was held in the case of *The St. Louis, V. & T. H. Railroad Co.* v. *Terre Haute & I. Railroad Co.* (145 U. S. 393), then surely it would be a mere evasion and would be inconsistent with legal principles for the court to imply a contract from the occupation under the illegal lease to relieve the wrongdoer from the dilemma into which he had voluntarily placed himself. We think the rule which should be applied is that the lessee is bound by the contract so long as he remains in possession.

It is unnecessary now to determine whether a lessee under an *ultra vires* lease may relieve himself from liability in the future by abandoning the possession and restoring, or offering to restore, it to the lessor.

The courts in this state from an early day, commencing
as far back as the *Utica Insurance* cases, have sought to
regulate and restrict the defense of *ultra vires* so as to make
it consistent with the obligations of justice. (*Utica Ins. Co.*
v. *Scott,* 19 John. 1 ; *Curtis* v. *Leavitt,* 15 N. Y. 9 ; *Bissell* v.
*M. S. Railroad Co.,* 22 id. 260, Op. COMSTOCK, C. J. ; *Parish*
v. *Wheeler,* Id. 495 ; *Whitney Arms Co.* v. *Barlow,* 63 id. 62 ;
*Pratt* v. *Short,* 79 id. 437 ; *Woodruff* v. *Erie Railway Co.,*
93 id. 609 ; *Starin* v. *Edson,* 112 id. 206.)    The case of
*Woodruff* v. *Erie Railway* (*supra*) is very much in point
in the present controversy.    It was there held that the lessee
of a railroad could not resist the payment of rent which
accrued during its occupation under the lease on the ground
that the lessor's title was derived under an *ultra vires* trans-
action.    Our conclusion, therefore, is that the main ques-
tion was properly decided against the defendant.    It is said,
however, that the contract was a Maine contract, and that by
the law of that state the lease was illegal and void and no
action could be maintained upon it. *It is a sufficient answer
to this claim that the law of Maine on the subject does not
appear by the record, and that it is the duty of this court,
therefore, to determine the case according to the law of New
York as established, or in the absence of controlling authority,
as justice having regard to all interests may seem to the court
to require.*

The question as to the liability of the defendant for the
taxes assessed in 1890 was, we think, correctly adjudged.

Finding no error in the record the judgment should be
affirmed.

VANN, J. (dissenting).    This action was founded upon a
written instrument in the following form, viz. :

" Know all men by these presents, that the United Gas,
Fuel and Light Company, a corporation organized under the
laws of Maine, and having a place of business in Gardiner,
in that state, as *principal,* and John Claffy, of Brooklyn,
Kings county, and state of New York, and John T. Rowland,

of Jersey City, Hudson county, and state of New Jersey, as *sureties*, are holden and stand firmly bound and obliged unto the Bath Gas Light Company, a corporation organized under the laws of Maine, and having a place of business in Bath, in said state, in the sum of fourteen thousand dollars ($14,000), to be paid to the said Bath Gas Light Company, or its assigns, to the which payment, well and truly to be made, we bind ourselves, our heirs, executors and administrators firmly by these presents.

"Sealed with our seals, dated the tenth day of November, one thousand eight hundred and eighty-eight.

"The condition of the above obligation is such that, on the tenth day of November, A. D. 1888, the Bath Gas Light Company aforesaid leased to the United Gas, Fuel and Light Company aforesaid its entire plant and charter rights for manufacturing and disbursing gas, subject to certain conditions fully set forth in said lease; and if the said United Gas, Fuel and Light Company shall faithfully and fully execute and perform the conditions of said lease, then this bond shall be void; otherwise remain in full force."

By the lease referred to the Bath Gas Light Company demised and let to the United Gas, Fuel and Light Company "the real estate, personal property, trade fixtures and incorporate rights belonging to and used by the said lessor in carrying on its business of manufacturing and supplying the inhabitants" of the city of Bath, Maine, "with gas." The instrument stated that the intention of the lessor was "to transfer and set over to the said lessee during the terms of" said "lease, and subject to the conditions" therein "named, all the rights to manufacture and sell gas under the provisions of the charter granted to the said Bath Gas Light Company on the 22d day of February, 1853, together with any amendments thereto; all the property held by it, the said lessor, in carrying on the said business of manufacturing or selling gas, whether the said property be real, personal or mixed; * * * to hold for the term of twenty-five years from the first day of November, 1888, yielding and paying therefor the

rent of $2,800 per annum." There was a covenant on the part of the lessee to pay the rent semi-annually on specified days, to surrender at the end of the term, and against waste. There was also a provision that the lessee would "give to the lessor a bond for the faithful performance of the terms of" said "lease in the sum of $14,000, and the responsibility of said bond" was to be "constantly maintained to the satisfaction of said lessor." "All taxes duly assessed on the premises during the term aforesaid" were to be paid by the lessee, and it was given the right "to alter or change the said gas works so as to manufacture the gas from petroleum or any other product." It was agreed that the lessee might "repair or rebuild any part or all of said works, if necessary, for the proper and safe management of said business, and that, upon the reinvestment of said works in the said lessor at the expiration of the term * * * the said lessee" should be "allowed for all improvements," with the right to an arbitration to settle the value thereof, if not agreed upon. The lessor covenanted to "assign and transfer to the said lessee, or its assigns, so much as it may be possible to procure of the capital stock of said Bath Gas Light Company, * * * at any time within five years," at $80 per share. The lessor promised that it would "endeavour to have its charter extended so as to cover the right of using gas for heating purposes."

The main defense set forth in the answer of Mr. Claffy, who was the only defendant sued, is that the lease was *ultra vires* and void, because the plaintiff had no power to let for a long term of years all its property and franchises to another corpo-. ration engaged in the same business. The trial court held that the lease was void, but that the plaintiff could recover, as upon a *quantum meruit,* for use and occupation, although no such cause of action was alleged in the complaint, and no proof given as to rental value, aside from the rent reserved in the lease itself.

The plaintiff is a corporation organized in 1853 under a special statute of the State of Maine, with authority to make, sell and distribute, in the usual way, illuminating gas to the

city of Bath and its inhabitants for the purpose of lighting buildings, streets and public places. It was given power by its charter to hold such real and personal property as should be necessary to enable it to carry on the business aforesaid, and also " to lay gas pipes in any of the public streets or highways in said city, upon first obtaining consent " of the proper authorities. It was its duty, as the charter provided, " at all times and within a reasonable time after request by the city council  *  *  *  to supply with gas to such an extent and in such a manner as " should be " required, any street or public building, at a fair and reasonable rate of payment therefor." There was an express provision that if it should " at any time refuse or unreasonably neglect to comply with this provision, the exclusive privilege " granted by the charter should " be of no effect." It was further provided that the common council might at any time take and hold capital stock of the company to an amount not exceeding one-half thereof, upon payment of a proportional part of the cost of the investment, with the addition of ten per cent thereto. The charter conferred no powers upon the plaintiff, other than those mentioned, and certain incidental authority common to all corporations of a similar nature.

This company laid pipes in the streets of Bath, carried on the business for which it was created, and performed its functions under its charter, from 1853 until the 10th of November, 1888, when another corporation, known as the United Gas, Fuel and Light Company, was organized under the general statutes of the state of Maine, with power to make and furnish gas for lighting purposes, as well as heat and motive power derived from gas, for heating and manufacturing purposes, without restriction as to locality. On the same day that the last-named company was organized, the plaintiff leased to it for the term of twenty-five years all its property, rights and franchises, and thereupon the new company took possession of all the property of the plaintiff, including the gas plant, " rights of way through the streets," and four miles of gas mains laid in the public highways. It continued in possession

until August 2, 1890, when, owing to the non-payment of rent and taxes the plaintiff resumed possession of the property and rights covered by the lease. This action is brought upon the bond given to secure performance of the lease, to recover as damages for the breach of the condition thereof, the amount of rent and taxes that became due while the lessee was still in possession.

No express authority was conferred upon the plaintiff by its charter to execute a lease so sweeping in character as to part not only with all its property, but also with all its power to carry on business for a quarter of a century. There was certainly no implied power conferred upon the plaintiff to execute such an instrument, for the implied powers of corporations are confined to such as are incidental to those expressly granted and necessary for the convenient and proper enjoyment thereof. (*Village of Carthage* v. *Frederick*, 122 N. Y. 268, 271; *People ex rel. Peabody* v. *Chicago Gas Trust Co.*, 130 Ill. 268, 283; Beach on Corporations, § 637.) The plaintiff is a public or *quasi* public corporation, because it was created not merely for the private gain of its stockholders, but for the benefit of the public also. It owed certain express duties to the public, for it was bound to supply with gas any street or public building upon request of the city council. It had a franchise from the city to lay mains in public streets for the purpose of furnishing gas to the inhabitants. It was under obligation, at any time, to transfer one-half of its stock to the city upon payment of a sum to be agreed upon, or adjusted by arbitration upon a prescribed basis of cost and profit. It was subject to the control of the legislature, could be given the power of eminent domain, and could be compelled by mandamus to discharge its duties to the public. The purpose of its creation was two-fold; first, to accommodate the public, both in its organized and unorganized capacity, by furnishing gas to the streets and buildings owned by the city and to the dwellings and business places of the people; and, second, to make it profitable for the stockholders to serve the public in this way. Its powers, therefore, were to be exercised in part for the

public good.   The due discharge of its duties to the public formed the consideration of the public grant, and an acceptance of the charter was an assumption of the duties imposed thereby.   (*New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650.)   As was said by Chief Justice FULLER in *Gibbs* v. *Consolidated Gas Co.* (130 U. S. 396, 408): "The supplying of illuminating gas is a business of a public nature to meet a public necessity.   It is not a business like that of an ordinary corporation engaged in the manufacture of articles that may be furnished by individual effort."   And in an earlier case in the same court, Mr. Justice HARLAN said:

"The manufacture of gas and its distribution for public and private use by means of pipes laid under legislative authority in the streets and ways of a city, is not an ordinary business, in which any one may engage, but it is a franchise belonging to the government, to be granted for the accomplishment of public objects to whomsoever, and upon what terms, it pleases.   It is a business or a public nature, and meets a public necessity for which the state may make provision." (*New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650, 669.)

The lease under consideration was a contract that wholly disabled the plaintiff from performing those duties to the public that were required by its charter.   It was a complete transfer, for the period of twenty-five years, of all corporate rights, powers and property, except the right to maintain its organization, collect rents, declare dividends and the like.   It could no longer carry on its legitimate business.   It could neither make nor sell gas.   It could not use the mains that it had laid in the public streets, by permission of the city authorities, for the purpose of distributing gas.   It had parted with all control over its own property used to carry on its business.   It had transferred to a rival corporation all its "rights to manufacture and sell gas" under the provisions of its charter.   It had neither the means nor the right to make or sell that commodity, the making and selling of which was the object of its existence.   It could discharge no duty that

it owed to the city or to the general public, because it had, in effect, abdicated every vital function by the transfer of its corporate rights.   As was said by Judge FINCH in an important case: " Only a shell of the corporation was left standing as a seeming obedience to the law, but with all its internal structure destroyed or removed." (*People* v. *N. R. Sugar Refining Co.*, 121 N. Y. 582, 623.) I regard this lease as opposed to public policy, and, therefore, void.   It was beyond the corporate powers of the lessor, and involved an abandonment of its duty to the public.   When the charter of a corporation confers upon it a franchise intended, in a large measure, for the public good, it cannot, without consent of the legislature, by lease or any other instrument, transfer to another company for a long period of time the exclusive right to use that franchise, and to carry on the business for which the charter was granted.   It cannot, by contract, render itself powerless to perform the public duties that it assumed in accepting its charter.   It cannot sell itself, or its right to be a corporation, or, what is the same in effect, its power to carry on the business for which it was organized.   The legislature created the plaintiff, and in the act creating it conferred upon it certain rights which were a part of it, and the most important of those rights was the authority to make, sell and distribute gas. Without that right its charter would have been an empty name, and of no value.   With that right it could do business, and while thus earning money for its stockholders, confer a benefit upon the public.   It was a vital right, and when the plaintiff attempted to confer it upon another, either for a long or a short period, it practically suspended its own existence during that period.   The legislature, in chartering the plaintiff, not only conferred rights, but also imposed obligations upon it, and it could not, by agreement, disable itself from performing those obligations without the consent of the power that imposed them.   It was bound, as by contract, not to abandon those duties.   By the express terms of its charter its right to existence depended upon its discharge of the duty to supply gas to the public streets and buildings upon the

request of the city council. It could not, by its own act, absolve itself from performing that duty. It could not lease the most essential part of its franchise, which was the right to make and sell gas, without unfitting itself for the performance of its duties to the public. By the lease in question, it parted for a long period of time with its manufacturing plant, all its tangible property, including everything that was essential to its business, as well as the use of its franchise and its power to serve the public. It stripped itself of substantially everything but a name. All of the authorities, as I read them, hold that such contracts are void, and in support of this position I cite the following: *Central Transportation Co.* v. *Pullman's Palace Car Co.* (139 U. S. 24); *Gibbs* v. *Consolidated Gas Co.* (130 U. S. 396); *Penn. R. R. Co.* v. *St. Louis, etc., R. R. Co.* (118 U. S. 290); *Thomas* v. *R. R. Co.* (101 U. S. 71); *People* v. *Ballard* (134 N. Y. 269, 294); *S. C.* (136 N. Y. 639); *People* v. *N. R. Sugar Refining Co.* (121 N. Y. 582); *Troy and Boston R. R. Co.* v. *Boston, etc., R. Co.* (86 N. Y. 107); *Abbott* v. *Johnstown, etc., R. R. Co.* (80 N. Y. 27); *Abbott* v. *American Hard Rubber Co.* (33 Barb. 578); *Taylor* v. *Earle* (8 Hun, 1); *Frothingham* v. *Barney* (6 Hun, 366).

Although the lease was *ultra vires* it does not follow, simply on that account, that it cannot be enforced, so far as it has been executed, by compelling the lessee to pay rent for the period that it was in the actual possession and enjoyment of the property leased. While courts of all jurisdictions seek to afford a remedy for the value received by one party from the practical performance of an *ultra vires* contract by the other, they differ as to the ground of recovery. The position of the Supreme Court of the United States upon the subject is that a contract made by a corporation, which is unlawful and void because beyond the scope of its corporate powers, does not, by being carried into execution, become lawful and valid, and that the proper remedy of the party aggrieved is to disaffirm the contract and sue to recover, as on a *quantum meruit*, the value of what the defendant has actually received

the benefit of. (*Pittsburgh, etc., R. Co.* v. *Keokuk, etc., Bridge Co.,* 131 U. S. 371, 389; *Louisiana* v. *Wood,* 102 U. S. 294; *Parkersburg* v. *Brown,* 106 U. S. 487, 503; *Chapman* v. *Douglas County,* 107 U. S. 348, 360; *Salt Lake City* v. *Hollister,* 118 U. S. 256, 263; *Penn. R. R. Co.* v. *St. Louis, etc., R. R. Co.,* 118 U. S. 290, 317.)

In many of the states the same rule prevails where the contract is simply *ultra vires* and not *malum prohibitum.* While the contract is held to be void, the party who has received value under it is compelled to refund, after rescission by the other, either in an action at law for money had and received, or in a suit in equity to compel an accounting and restitution. (*White* v. *Franklin Bank,* 22 Pick. 181; *Morville* v. *Am. Tract Soc.,* 25 Am. Rep. 40; *Davis* v. *Old Colony R. R. Co.,* 41 Am. Rep. 221; *Paul* v. *Kenosha,* 94 Am. Dec. 598; *Moore* v. *Swanton Tanning Co.,* 60 Vt. 459; *Anthony* v. *Household S. M. Co.,* 16 R. I. 571; *Harriman* v. *First Baptist Church,* 63 Ga. 186; *Day* v. *Spiral Springs Buggy Co.,* 57 Mich. 146.)

The application of these principles to this case would defeat the plaintiff, for, unless there could be a recovery from the lessee upon the lease, there could be none against its sureties upon the bond, as their sole agreement was that the former should "faithfully and fully execute and perform the conditions of said lease." (*Rosa* v. *Butterfield,* 33 N. Y. 665; *Stewart* v. *Bramhall,* 74 N. Y. 85; *Union National Bank of Pittsburgh* v. *Wheeler,* 60 N. Y. 612; 3 Am. & Eng. Ency. of Law, 889.)

"The obligation of the surety being accessory to the obligation of some person who is the principal debtor, it is of its essence that there should be a valid obligation of a principal debtor. The nullity of the principal obligation necessarily induces the nullity of the accessory." (Theobald Prin. and Sur. 2; Chitty on Contracts, 499.)

On the other hand, the courts of this state have permitted a recovery upon the contract itself, although *ultra vires,* when wholly or partly performed, for the reason that to hold other-

wise would promote injustice. Thus, in *The Whitney Arms Co.* v. *Barlow* (63 N. Y. 62, 69) this court said: " Whether the contract as originally made was *ultra vires*, is not a very important inquiry at this time. If it was, the state, under whose sovereignty it dwells, and by whose act and favor it exists, has no interest in arresting its action for the recovery of moneys equitably due upon a contract fully executed, and a work fully accomplished, whatever may be its right to annul its charter. * * * The plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong. * * * A purchaser who acquired by contract, and under an agreement to pay for it, the property of a corporation, cannot defeat the claim for the purchase price by impeaching the right of the corporation to become the owner of the property. One who has received from a corporation the full consideration for his engagement to pay money, either in services or property, cannot avail himself of the objection that the contract, thus fully performed by the corporation, was *ultra vires*, or not within its chartered privileges and powers. It would be contrary to the first principles of equity to allow such a defense to prevail in an action by the corporation." It was accordingly held that in an action brought under the General Manufacturing Act of 1848 (L. 1848, ch. 40, § 12, and L. 1853, ch. 333), by one manufacturing corporation against the trustees of another, to recover the contract price for goods sold and delivered to the defendant's corporation, the objection that the plaintiff was not authorized to manufacture and sell the goods, or to enter into the contract, was not available as a defense. The contract in that case, however, was not a violation of any right owing by the corporation to the public. This is true also of other cases relied upon by the respondent. (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159; *Atlantic S. Bank* v. *Savery*, 82 N. Y. 291; *Rider Life Raft Co.* v. *Roach*, 97 N. Y. 378; *Starin* v. *Edson*, 112 N. Y. 206; *Mayor, etc.*, v. *Huntington*, 114 N. Y. 631;

*City of Buffalo* v. *Balcom,* 134 N. Y. 532.) These cases seem to rest upon the ground of estoppel, which prohibits a corporation from pleading the defense of *ultra vires* so long as it retains the benefits of the transaction, but in *Kent* v. *Quicksilver Mining Co.* (78 N. Y. 186) a distinction is sug-- gested when the franchise is of a public nature. In *Woodruff* v. *Erie R. Co.* (93 N. Y. 609) the lessor owed a duty to the public, but certain statutes were relied upon as authorizing the lease, the power to make which was the subject of controversy. (p. 616.)

Thus, the court, through its chief judge, after a review of the statutes, said : " It would seem to follow from these stat- utes that the supreme legislative authority of this state does not regard the transfer of the property and privileges of one railroad corporation to another with a view of their operation by the lessees thereof, as either contrary to good morals or public policy." (p. 617.) The court considered, but did not decide, the question, which arose in that case, whether a lease by a railroad corporation of its property and privileges to an individual was *ultra vires* or not, as it held that the grantee in such a conveyance, at least so far as the contract has been exe- cuted, is estopped from contesting the title of his lessor, or the validity of the conveyance by which he has acquired, and still holds, possession of the leased property.

Where the contract of a corporation is contrary to public policy, solely because made in excess of its rightful powers, but it is free from every other vice, it is not illegal in the sense of the maxim, *ex turpi contractu non oritur actio.* Such a contract, when partly performed, may well be propor- tionately enforced where justice requires it, in order to prevent a defendant from alleging his own wrong for the purpose of avoiding a just responsibility. When, however, the contract of a corporation is contrary to public policy for some cause that would avoid the contract of a natural person, as, for instance, an agreement tending to defeat or impair the interest of the state, a more serious question is presented. The abnega- tion, by contract, of a public duty, while not *malum prohibitum*

because forbidden by statute, may be so because forbidden by the principles of the common law. The enforcement of such a contract, so far as performed, in order to prevent injustice to individuals, might inflict greater injustice upon the state. Where neither party is misled by the other, but both know that the contract disables a corporation from discharging a duty that it owes to the public, according to the express requirement of its charter, should any part of it be enforced? When the interest of the state is involved, should even a *particeps criminis* be prevented from asserting that such a contract is void? (5 Thompson's Commentaries on Corporations, § 5998.) It is not necessary, however, that we should answer these questions in this case by announcing the law of our own state upon the subject, as the rule that prevails in the state of Maine should govern the rights of the parties now before us. The lease was made and was to be performed in the state of Maine. The parties thereto were corporations organized under the laws of that state. They both had offices and were doing business there. The property covered by the lease was situated there, was used for a purely local purpose, and it could not be used to any extent at any other place. The presumption is, therefore, that the parties intended that the contract should be governed by the law of the place of performance as to its validity, nature and effect. (*Dickinson* v. *Edwards*, 77 N. Y. 573; *Liverpool, etc., Co.* v. *Phenix Ins. Co.*, 129 U. S. 397; Story Conflict of Laws, § 240.)

In order to prove the common law as it exists in the state of Maine, upon the principal question involved, the defendant read in evidence, without objection, the following authorities; *Gould* v. *Bangor & P. R. R. Co.*, (82 Me. 122); *Edison U. M. Co.* v. *Farmington E. L. & P. Co.* (82 Me. 470); *Bailey* v. *Trustees M. E. Church* (71 Me. 472); *Franklin Co.* v. *Lewiston Inst. for Savings* (68 Me. 43); *Cummings* v. *Webster* (43 Me. 192); *Andrews* v. *Mutual Fire Ins. Co.* (37 Me. 256), and *Bangor Boom Corporation* v. *Whiting* (29 Me. 123). The plaintiff read in evidence *Inhabitants of Bucksport* v. *Woodman* (68 Me. 33), which is doubtless a miscitation, as it has

no bearing upon the subject. Some of the authorities relied upon by the defendant do not apply to this case, but others hold that there can be no recovery on· a contract made by a corporation outside of its corporate powers, even where it has had the benefit thereof and the agreement has been fully executed. That rule, if applied without qualification, would defeat a recovery by the plaintiff in this action. Since the decision of this case by the trial court, the Supreme Court of Maine has declared the law of that state in an action founded upon a lease like that now under consideration, which was brought against the same lessee as defendant. (*Brunswick Gas Light Co.* v. *United Gas, Fuel and Light Co.*, 85 Me. 582.) While we may not refer to that case as evidence, because it is not a part of the record, we may refer to it as an authority, most cogent and persuasive, to aid us in interpreting the cases that were read in evidence. In deciding that case the court held that a corporation, which owes duties to the public as well as to its stockholders, cannot sell or lease its corporate powers or privileges and thereby disable itself from performing its public duties. The lease was also held to be void upon the ground that traffic in corporate franchises, if allowed, would tend to create monopolies. The court declared that there could be no recovery of rent upon the lease and expressly adopted the rule of the Supreme Court of the United States upon the subject, that the proper remedy was " to disaffirm the contract and sue to recover as on a *quantum meruit* the value of what the defendant has actually received the benefit of." I think that when the cases in evidence are read in the light of that authority, they show that the law of the state of Maine will not permit a recovery upon an *ultra vires* contract, whether it has been performed or not. The case cited is simply a logical application of the principle involved in the cases proved. While the reasons are amplified and the application is extended to a new state of facts, the conclusion is supported and warranted by the previous decisions.

7

For these reasons I am compelled to dissent from the judgment of affirmance pronounced by my associates and to vote for reversal and a new trial.

All concur with ANDREWS, Ch. J., for affirmance, except VANN, J., dissenting.

Judgment affirmed.